PEOPLE v GROVE

PEOPLE v AUSTIN

Docket Nos. 103004, 103521. Argued April 8, 1997 (Calendar Nos. 9-10).
    Decided July 29, 1997.  Rehearing denied 456 Mich 1202.

Richard W. Grove was charged in the Delta Circuit Court with two
    counts of first-degree criminal sexual conduct and one count of
    second-degree criminal sexual conduct involving his minor daugh-
    ter. The court, Robert W. Goebel, J., accepted under advisement a
    plea bargain of guilty of fourth-degree criminal sexual conduct, but
    later rejected it. The defendant was convicted by a jury of one
    count of second-degree criminal sexual conduct. The Court of
    Appeals, GRIFFIN, P.J., and SAWYER and R. L. ZIOLKOWSKI, JJ., reversed
    and remanded to permit the defendant to plead guilty of fourth-
    degree criminal sexual conduct according to the terms of the previ-
    ous plea agreement (Docket No. 161031). The people appeal.

David Austin was charged in the Charlevoix Circuit Court with two
    counts of first-degree criminal sexual conduct involving two thir-
    teen-year-old girls and one count of fourth-degree criminal sexual
    conduct involving a fourteen-year-old girl. At a scheduling confer-
    ence, the parties agreed on a cutoff date beyond which no plea
    agreements would be accepted. The court, Richard M. Pajtas, J.,
    subsequently refused to accept a plea agreement of guilty of two
    counts of third-degree criminal sexual conduct and one count of
    fourth-degree criminal sexual conduct tendered after the cutoff
    date. The defendant was convicted by a jury of two counts of first-
    degree criminal sexual conduct, and, thereafter, pleaded guilty of
    one count of fourth-degree criminal sexual conduct and of being an
    habitual offender, second offense. The court denied the defendant's
    motion for a mistrial on the ground of juror exposure to inadmis-
    sible evidence, concluding that he suffered no actual prejudice. The
    Court of Appeals, TAYLOR, and M. G. HARRISON, JJ. (DOCTOROFF, C.J.,
    dissenting), affirmed, holding that the trial court's refusal to accept
    the plea was not an abuse of discretion, that the defendant was not
    prejudiced by the juror's exposure to inadmissible evidence, and
    that the failure to delete certain letters from the presentence report
    was harmless error (Docket No. 143504). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice MALLETT, and Justices BRICKLEY, RILEY, and WEAVER, the Supreme Court *held*:

In *Grove*, the trial court had the authority under MCR 6.302(C)(3) to exercise its discretion in rejecting the defendant's guilty plea. In *Austin*, the trial court's rejection of the plea agreement was not an abuse of discretion, nor was the defendant prejudiced by the alleged juror misconduct.

1. Under *People v Killebrew*, 416 Mich 189 (1982), and MCR 6.302(C)(3)(a), the decision whether to accept or reject a bargained plea on the basis of whether acceptance of the proffered plea presents an undue interference with the judge's sentencing discretion, given the facts of the individual case, is a proper exercise of the trial court's discretion. MCR 6.302(C)(3)(a) authorizes a trial judge to reject an entire plea agreement, including the underlying plea, where the plea agreement includes either a sentence agreement or a sentence recommendation. A conclusion that the judge is compelled to accept a bargained plea would frustrate the competing policy interests at stake by transferring the trial judge's sentencing discretion to the prosecutor in cases where the plea reduction would result in a substantial reduction of the potential range of sentences and would erode public confidence in the judiciary. Such a rule would not be faithful to the judicial role of a detached and neutral judicial official, but would reduce the judge's role to one of merely providing the court's rubber stamp for the defendant's plea, regardless of the level of imposition on the judge's sentencing discretion. MCL 767.29; MSA 28.969 also supports the conclusion that a judge is not compelled to accept a plea agreement in which there is a prosecutorial sentence recommendation, reflecting a legislative understanding of the trial judge's role in ensuring that the public's interest in bringing criminals to justice is not defeated by unconstitutional, illegal, or ultra vires acts by the prosecutor. In *Grove*, the trial judge did not abuse his discretion in rejecting the entire plea agreement, including the underlying plea. His reasoning reflected his understanding of the plea agreement, considering the facts and the interests of the victim, as a substantial hinderance of his ability to impose an appropriate sentence under the plea bargain. The judge's actions were consistent with MCL 767.29; MSA 28.969 and the analysis in *Killebrew*, and were authorized under MCR 6.302(C)(3).

2. The court rules provide for and encourage the use of scheduling orders to promote the efficient processing of civil and criminal cases. The deference due prosecutorial prerogative and the rights of the defendant under the court rules are outweighed by judicial discretion to control the scheduling of trial procedures in ongoing

prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses. A judge is within judicial discretion in refusing to entertain a tardy plea agreement. Optimum service to the public, to victims, witnesses, jurors, litigants, and to counsel mandates that trial judges have the authority and discretion to manage dockets. Such a decision will only be overturned for an abuse of discretion. A defendant has only an opportunity, not a right, to plead guilty. No right is denied when the opportunity is not timely exercised. In *Austin*, the parties were aware of the scheduling order and agreed to the dates set at the scheduling conference, but offered the plea over a month after the cutoff date. The judge believed that two and one-half months was sufficient time to negotiate a plea, and he recognized that he had the discretion to accept the plea despite its tardiness. He entertained defense counsel's arguments in favor of the plea agreement, but apparently determined that the need to adhere to the scheduling policy outweighed the considerations asserted by the parties. Nothing in the record indicates that the judge abused his discretion in reaching that decision.

3. Whether prejudice warranting a new trial results from the reading by the jurors of news articles or seeing or hearing broadcasts must turn on the special facts of each case, and the question is left largely to the determination and discretion of the trial court. In *Austin*, the defendant was not prejudiced by a juror's exposure to inadmissible evidence. The trial judge did not abuse his discretion in declining to declare a mistrial on defendant's motion. The judge heard the evidence during trial and observed the demeanor of the witnesses during the motion for mistrial. He listened to counsel and rendered his decision on the basis of the evidence. There was no evidence in the record that the judge abused his discretion in deciding that the defendant was not prejudiced by the presence of this juror. Rather, it indicates that, although the juror heard certain information and was initially affected by it, he was able to set that information aside and render a decision solely on the basis of the evidence presented.

*Grove*, reversed.

*Austin*, affirmed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that in *Grove*, the trial judge acted as a superprosecutor in refusing to accept the defendant's plea and sentence bargain despite objections from both the prosecution and the defense. His refusal violated the Michigan Court Rules and the defendant's constitutional rights, and was an abuse of discretion. In *Austin*, the trial court's rejection of a plea agreement also was an abuse of discretion. The

judge had no authority to reject the plea agreement simply because it was entered into after the court's plea cutoff date. The defendant's convictions should be vacated and the case remanded for entry of the original negotiated plea. Further, the defendant was prejudiced by the alleged juror misconduct, and certain letters attached to the presentence report should be deleted.

A prosecutor has broad discretion in determining which charges to bring against a defendant. A circuit judge may not usurp authority vested in the prosecutor to determine what charges are brought, except as explicitly provided by law. Judicial modification of prosecutorial decisions is appropriate only if the decisions are unconstitutional, illegal, ultra vires, or an abuse of prosecutorial authority. A trial judge who rejects a sentence bargain should state what sentence would be imposed, and the defendant should be given the option to accept or reject it or to withdraw the plea. In *Grove*, there was no finding that the prosecutor exceeded his authority or abused his discretion. Both the prosecution and the defense evaluated the likelihood of success at trial and concluded that their respective interests would best be served by a compromise plea agreement. The judge disagreed, rejected the entire agreement, and reinstated the original charges because of his assessment of the case, contrary to court rule and case law.

There is no authority in the current Michigan Court Rules for a court to reject a plea agreement on the basis of a plea cutoff date. A trial court has no greater authority to refuse to accept a plea over a prosecutor's objection than it has to accept one. Like civil litigants, a prosecutor and a defendant are free to settle a case by agreement, even on the eve of trial. Even if it were assumed that a trial court has discretionary authority to reject a guilty plea as untimely, the scope of that discretion is limited. The maintenance of routine deadlines justifies interfering with the prosecutor's charging authority or with the parties' agreement only if the court can show it serves the interests of justice. In *Austin*, no circumstances existed justifying the rejection of the plea. The plea offer was made by the prosecutor on the day before trial. The defendant accepted the offer the same day. There was no delay in the acceptance, only in the offer.

208 Mich App 574; 528 NW2d 796 (1995) reversed.

209 Mich App 564; 531 NW2d 811 (1995) affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Thomas L. Smithson*, Prosecuting Attorney, and *Charles D. Hackney* and *Steven*

*Flancher,* Assistant Attorneys General, for the people
in *Grove.*

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Mary Beth Kur,* Prosecuting
Attorney, and *William E. Molner,* Assistant Attorney
General, for the people in *Austin.*

*Lester O. Pollak* for defendant Grove.

State Appellate Defender (by *Valerie R. Newman*)
for defendant Austin.

Amici Curiae:

*Norris J. Thomas, Jr.,* for Criminal Defense Attorneys of Michigan.

*Michael D. Thomas,* President, *John D. O'Hair,*
Prosecuting Attorney, and *Timothy A. Baughman,*
Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

BOYLE, J. We granted leave in *People v Grove* to
address whether a trial court has discretion under
MCR 6.302(C)(3) to reject the plea underlying a plea
agreement that includes a prosecutorial sentence recommendation. We granted leave in *People v Austin* to
address (1) whether the trial court abused its discretion in refusing to entertain the defendant's guilty
plea, which was part of a plea agreement reached
after the trial court's "plea cutoff" date, (2) whether
the trial court abused its discretion in denying
defendant's motion for mistrial on the ground of juror
misconduct, and (3) whether the case should be
remanded to the trial court for correction of the
presentence report.

In *Grove*, we hold that the court had the authority under MCR 6.302(C)(3) to exercise its discretion in rejecting defendant's guilty plea. We reverse the decision of the Court of Appeals and reinstate the trial court's conviction. In *Austin*, consistent with our reasoning herein, we find the trial court's rejection of the plea agreement was not an abuse of discretion. We also hold that defendant was not prejudiced by the alleged juror misconduct, and we affirm the decision of the Court of Appeals on that issue. We order that the letters from Sergeant Harris dated June 27 and 28, 1991, be deleted from the presentence report.[1]

### I. FACTS AND PROCEEDINGS

#### A. *PEOPLE v GROVE*

The Michigan State Police arrested defendant Grove on March 1, 1991, in connection with allegations of criminal sexual conduct. Defendant was charged in Delta County with two counts of first-degree criminal sexual conduct,[2] a felony offense carrying a maximum sentence of life or any term of years,[3] and one count of second-degree criminal sexual conduct,[4] a felony offense carrying a maximum sentence of fifteen years imprisonment.[5] The complainant was the defendant's fifteen-year-old daughter,

---

[1] Although the parties and the judge reference only the letter to Judge Pajtas, we find two substantially similar letters attached to the report; one was sent to the person who prepared the report.

[2] MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).

[3] MCL 750.520b(2); MSA 28.788(2)(2).

[4] MCL 750.520c(1)(a); MSA 28.788(3)(1)(a).

[5] MCL 750.520c(2); MSA 28.788(3)(2).

who was under the age of thirteen at the time of the acts for which defendant was charged.[6]

On August 2, 1991, the prosecutor, defendant, and defendant's counsel appeared before acting circuit Judge Robert E. Goebel for a pretrial conference.[7] The parties informed the court that they had reached a plea agreement whereby the defendant would plead guilty of fourth-degree criminal sexual conduct,[8] a misdemeanor offense carrying a maximum sentence of two years imprisonment and a $500 fine,[9] and the prosecutor would move to dismiss the other charges and recommend a sentence in the county jail not to exceed one year. Judge Goebel examined the defendant in accordance with MCR 6.302 to ensure that the plea was understanding, voluntary, and accurate.[10] The judge took the plea under advisement to review

---

[6] At trial, the victim testified that she had been sexually assaulted by her father from the time she was five or six until she was thirteen. The first incidents she remembered occurred in her bedroom. Defendant would come in at night and start "feeling up" her body. He told his daughter this was "a secret" and not to tell anyone. He would digitally penetrate her vagina for ten to fifteen minutes. These incidents became "common," occurring in defendant's bedroom and the living room, so that the victim "just more or less thought it was normal or something." He also "put [her] mouth around his penis" on several occasions. Leaving his pants on, he would undo his zipper and "push on the back of [her] head and push [her] down there." She did not tell anyone at first because she feared her father after watching him beat her brother. (Defendant is six feet, three inches tall and weighed 240 pounds when he was arrested.) When she was accused of lying about the incidents, she initially recanted her story. However, charges were brought when she later agreed to testify. The victim's testimony was substantially consistent with the facts she related to the Michigan State Police when she made her original complaint.

[7] Judge Goebel is a Delta County Probate Judge who was acting in place of vacationing circuit Judge Dean J. Shipman.

[8] MCL 750.520e; MSA 28.788(5).

[9] MCL 750.520e(2); MSA 28.788(5)(2).

[10] Defendant admitted touching his daughter's vagina when she was under the age of thirteen for the purpose of sexual arousal on more than one occasion between 1980 and 1986.

the presentence investigation report and to schedule
sentencing.

On the date set for sentencing, October 8, 1991,
Judge Goebel rejected the defendant's bargained
guilty plea:

> The Court has had the benefit of reading the presentence
> report, and I've had a conference with counsel and Mr.
> Ayotte of the corrections department in chambers. I noted
> to them that I had read the Defendant's version of the inci-
> dent, as well as the victim's version . . . of what had hap-
> pened . . . . I noted the victim recommended prison time
> and the cap as recommended by the prosecutor would not
> allow for prison time. I indicated that I thought I had the
> discretion, having taken the plea under advisement, and
> needed to first rule on whether or not I would accept the
> guilty plea. . . . I do not feel it would be in the interest of
> justice. I feel that there is such a wide disparity between
> what the victim claims had happened, as opposed to what
> the Defendant claimed had happened, and the victim's
> desire of a prison term that it would not be fair and in the
> interest of justice to accept this matter plea bargained to
> fourth degree. If, in fact . . . the first degree criminal sex-
> ual conduct had happened in the course of time as the vic-
> tim claims, I feel the matter should go to trial on the origi-
> nal charge. And the Defendant, if found guilty, should be
> sentenced appropriately under the charge he was found
> guilty on or pled guilty to as the case may be. If indeed this
> was only a relatively minor fourth degree incident, and
> there was no prior first degree criminal sexual conduct, or
> if indeed there was no factual basis for the sexual conduct
> at all, then the Defendant would be more fairly found not
> guilty. The prosecutor in chambers urged me to accept the
> plea, one of the reasons being that he felt the victim had
> recanted her story and she would be subject to possible
> impeachment. . . . [T]he difficulty in proving this
> case . . . was one of the principal reasons he wished to
> have this plea bargain accepted at the fourth degree level.

Defendant's counsel objected to the judge's refusal to accept the plea, and implied that the judge had attempted to coerce the defendant in chambers into agreeing not to contest the scoring of the penetration issue. After a brief hearing,[11] the judge stated on the record that he had neither engaged in such coercion nor penalized the defendant in any way for failing to admit anything.[12] The prosecutor, while indicating it was his intent to go forward with the plea bargain, stated that "it would be both appropriate and ethical to try the case at the level originally charged." The judge restated his ruling, and his belief that it was a "valid exercise of the Court's discretion . . . ." However, the judge specifically declined to preclude the parties from taking the plea agreement to Judge Shipman to seek his acceptance. The prosecutor did not submit the plea to Judge Shipman.

On December 10 through December 12, 1992, the defendant was tried before a jury on the original charges and convicted of one count of CSC II. Judge Shipman sentenced the defendant to forty months to fifteen years imprisonment. The Court of Appeals reversed the defendant's conviction and remanded with instructions for the "trial court to permit defendant to plead guilty of fourth-degree criminal sexual conduct in exchange for the terms of the parties' previous plea agreement." 208 Mich App 574, 580; 528 NW2d 796 (1995). We granted leave to appeal,[13] and we now reverse for the reasons stated below.

---

[11] Mr. Ayotte of the Department of Corrections testified regarding his impressions of the judge's concerns in chambers.

[12] Defendant has not pursued this issue on appeal, instead arguing the judge was not authorized under the rules to reject the plea.

[13] 451 Mich 905 (1996).

B. *PEOPLE v AUSTIN*

The Boyne City Police arrested defendant David
Austin on January 31, 1991, in connection with allega-
tions of criminal sexual conduct involving two vic-
tims. Defendant Austin was charged in Charlevoix
County under separate warrants with two counts of
CSC I. The information cited use of force or coercion
as the aggravating factor making the offenses CSC I.[14]
Defendant was twenty-nine years old. Both victims
were thirteen-year-old girls.[15] Defendant denied that
these incidents occurred.

A third felony warrant was issued on February 20,
1991, charging defendant with one count of CSC IV.
The victim was a fourteen-year-old girl.[16] Defendant
admitted to grabbing one of the victims named in the
February 20, 1991, warrant.

On March 11, 1991, the parties appeared before
Judge Richard M. Pajtas for a scheduling conference.
The parties estimated the trial would take three days,

---

[14] MCL 750.520b(1)(f); MSA 28.788(2)(1)(f).

[15] The record indicates that the victims were at the defendant's house
one day in late August or early September, 1988, in the basement with a
few other teenagers and adults, drinking wine coolers provided by the
defendant. One victim was defendant's babysitter; the other was invited
over. Defendant attempted to get one of the victims to take painkillers.
After the victims were drunk, the defendant took each separately into his
bedroom and forced her to engage in sexual intercourse on his bed.
Neither victim revealed these rapes to adults until August, 1990, because
of fear and psychological trauma associated with the incidents. One vic-
tim testified that the defendant had repeatedly asked her for sex before
the rapes.

[16] The record indicates that the defendant supplied alcohol to the vic-
tim and two other teenage girls, one of whom was another of defendant's
babysitters, on June 8, 1990. After spending most of the night with the
girls at one of their residences, defendant took two of them to another of
their residences around 6:30 A.M. on June 9, 1990. Defendant began to
wrestle with both, touched them in their private areas, and bit them on
their breasts.

and they agreed to schedule the trial for June 25, 1991. They also agreed that May 13, 1991, would serve as the date on which any and all motions would be heard and as the date beyond which "no reduced pleas pursuant to a plea agreement between defense and prosecution" would be accepted.

The day before the scheduled trial date, the parties appeared before the trial court and informed the court that they had reached a plea agreement. Under the agreement, defendant agreed to plead guilty of two counts of CSC III[17] in relation to the incidents that occurred in 1988, and one count of CSC IV in relation to the incident that occurred in 1990. In exchange, the prosecutor agreed to drop the original charges and agreed not to pursue an habitual offender charge or second offense charges.

The trial judge refused to accept the plea agreement because it was presented after the plea cutoff date:

> As you know, the Court does not participate in your plea bargaining, but I do now set a date beyond which I will accept no negotiated pleas. . . . I set the matter for a scheduling conference on March 11, 1991, the next available motion day [after arraignment]. . . . And at that scheduling conference both Counsel appeared, the needs of the case were discussed and a jury trial date . . . was set.
>
> Also, we set [May 13] to hear any and all motions . . . , if there were to be any. And also at that scheduling conference, after discussion, we set May 13, 1991, as the date that no reduced pleas, pursuant to a plea agreement . . . would be accepted. And so Counsel has had two and one half months from the date of the arraignment to plea bargain this case.

---

[17] MCL 750.520d(1); MSA 28.788(4)(1).

*    *    *

> That is, in my opinion, more than a reasonable time to
> investigate the case, to make an offer, to negotiate and so
> forth. And I have heard no persuasive reason why I should
> make an exception to the plea cutoff date. I recognize the
> discretion to do so, but I'm not persuaded by the reasons
> set forth that it would be a proper exercise of discretion.

The case proceeded to trial on the charges related
to the 1988 incidents, and on June 26, 1991, the jury
convicted defendant Austin of both counts of CSC I.
On July 22, 1991, defendant pleaded guilty of being
an habitual offender, second offense,[18] and the judge
sentenced him to two concurrent life terms of incar-
ceration. At the same hearing, defendant also pleaded
guilty of the CSC IV charge related to the 1990 incident.
The judge sentenced defendant to incarceration for
one to two years for this offense.

After the trial on the CSC I charges, the judge
learned from one of the jurors that, after the first day
of trial, the juror learned about other CSC charges
pending against the defendant when his wife began
telling him about a newspaper article concerning
defendant. These charges were not presented to the
jury during the trial. The juror immediately told his
wife that he was prohibited from hearing the informa-
tion, and she told him nothing further. Upon learning
this information, defense counsel filed a motion for a
mistrial.

A hearing on defendant's motion was held on
July 16, 1991. The juror in question and the jury fore-
man testified. The juror testified that he had not actu-
ally read the article, but that his wife had told him

---

[18] MCL 769.10;  MSA 28.1082.

that defendant had other rape charges pending. He immediately cut her off and explained the judge's instruction that the jurors not watch the news or listen to anything about the case. The prosecutor asked the juror how the information affected him "in terms of how [he] thought about [defendant]." The juror answered, "Well, I kind of really had my mind made up by then already before I ever got home—before I saw his side of the story." He also testified that he did not use the information he heard in deliberating to a verdict, and that he did not ignore the evidence presented during the second and last days of trial. He did not share the information with any other juror, but he did think it caused him to look at the defendant "[a] little" differently and made it harder for him to change his mind after the first day of trial. Finally, he testified that his decision was made on the basis of the evidence and was not influenced by his wife's comments.

The jury foreman testified that "it was very, very obvious that he [the juror] didn't have a preconceived notion of what was going to happen before we went into the jury room." He asked several questions and demonstrated a desire to reach the right decision. The foreman also testified, consistent with the juror's testimony, that the juror did not share the information with the rest of the jury.

The judge denied defendant's motion for a mistrial, concluding that defendant suffered no actual prejudice. The judge reasoned "that while he [the juror] was exposed to some inadmissible evidence, he did not consider it and did not let it influence him in arriving at a verdict."

At sentencing, defendant objected to inadmissible information attached to the presentence report. Two letters attached to the report essentially asserted that defendant was a sexual predator and discussed unrelated and unsubstantiated allegations of sexual misconduct by defendant. The judge responded by stating that he would not consider "the letter" when determining defendant's sentence. However, the judge did not delete the information from the presentence report when it was sent to the Department of Corrections. Defendant now requests that the information be deleted from the report, and the prosecutor expressly concedes that such relief is proper under MCR 6.425(D)(3).

The defendant appealed his conviction and sentence on several grounds, including whether the trial judge abused his discretion in refusing defendant's plea, juror misconduct, and the failure to delete the letters referenced above from the presentence report. 209 Mich App 564; 531 NW2d 811 (1995). The Court of Appeals affirmed on all issues, holding that the trial judge's refusal to accept the plea was not an abuse of discretion under the court rules, that defendant was not prejudiced by the juror's exposure to inadmissible evidence, and that the failure to delete the letters from the presentence report was harmless error. We granted leave to appeal,[19] and we now affirm in part, reverse in part, and remand.

---

[19] 453 Mich 945 (1996).

## II. DISCUSSION AND ANALYSIS

### A. *PEOPLE v GROVE*

1

The Court of Appeals correctly stated the issue as "whether a trial court is able to exercise its discretion to refuse to accept a guilty plea underlying a plea agreement that includes a prosecutorial sentence recommendation." *Grove* at 577. The Court of Appeals reversed defendant's conviction and remanded the case, stating:

> On remand, we instruct the trial court to permit defendant to plead guilty of fourth-degree criminal sexual conduct in exchange for the terms of the parties' previous plea agreement. If the trial court elects to reject the recommended sentence, then it must state the sentence it finds appropriate and give defendant the opportunity to affirm or withdraw his guilty plea. [*Id.* at 580.]

The Court of Appeals decided this case on the basis of its interpretation of our decision in *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982), and "the interplay between MCR 6.301(B) and MCR 6.302(C)(3)." *Grove* at 577. Former MCR 6.301(B) provided that the judge's consent was required where a defendant sought to plead guilty or nolo contendere. In its current form, the rule states, "A defendant may enter a plea of nolo contendere only with the consent of the court." The Court relied on the staff comment that "deletion of the consent provision indicates that the trial court may not refuse to accept a guilty plea based solely on disagreement with the wisdom of the plea, of the charge, or of the plea bargain, unless the bargain is conditioned on the

court's agreement to some provision, such as sentence disposition." Thus, the Court concluded:

> Unlike MCR 6.301(B), MCR 6.302(C)(3) refers to a trial court's acceptance or rejection of a plea agreement rather than the underlying guilty plea itself. Further, although we recognize that MCR 6.302(C)(3) allows a trial court to reject a plea agreement based upon a prosecutorial sentence recommendation, it is silent regarding the underlying plea.

*    *    *

> Under the sentence-bargaining procedures articulated in *Killebrew,* a trial court retains the option to reject a defendant's underlying guilty plea only when the plea agreement includes a specific sentence disposition. In contrast, *Killebrew* requires a trial court that rejects a plea agreement that includes a sentence recommendation to state the sentence that it finds to be appropriate and give the defendant the opportunity to withdraw the guilty plea. . . . In short, neither *Killebrew* nor MCR 6.302(C)(3) gives a trial court the discretion to reject a guilty plea underlying a plea agreement that includes a prosecutorial sentence recommendation. [*Grove* at 579-580.]

2

The Attorney General[20] maintains that the trial judge had the authority to reject the plea under MCR 6.302(C)(3), which states:

> If there is a plea agreement and its terms provide for the defendant's plea to be made in exchange for a specific sentence disposition or a prosecutorial sentence recommendation, the court may
>
> (a) reject the agreement; or

---

[20] In both cases, the Attorney General represents the prosecutor on appeal.

(b) accept the agreement after having considered the presentence report, in which event it must sentence the defendant to the sentence agreed to or recommended by the prosecutor; or

(c) accept the agreement without having considered the presentence report; or

(d) take the plea under advisement.

If the court accepts the agreement without having considered the presentence report or takes the plea agreement under advisement, it must explain to the defendant that the court is not bound to follow the sentence disposition or recommendation agreed to by the prosecutor, and that if the court chooses not to follow it, the defendant will be allowed to withdraw from the plea agreement.

The Attorney General argues that, according to the specific language of MCR 6.302(C)(3)(a), the trial judge is authorized to reject the entire plea agreement, including the underlying plea, where the plea agreement includes either a sentence agreement or a sentence recommendation. We agree.[21] Under the plain language of the rule, the word "agreement" in subsection (a) refers to the phrase "plea agreement" in subsection (3). That phrase, under the terms of subsection (3), is defined as an agreement between the prosecutor and the defendant wherein "the defendant's plea [is] made in exchange for [either] a

---

[21] Alternatively, the Attorney General presents arguments related to the defendant's standing to appeal on the basis of an interference with the prosecutor's charging discretion and the appropriateness of the remedy ordered in the Court of Appeals. We do not reach the remedy issues because we reverse the decision of the Court of Appeals. With regard to whether the defendant had standing to appeal the case to the Court of Appeals, we agree with the Attorney General that the defendant did not have standing to raise a separation of powers issue; however, defendant did have standing to allege that the trial judge's action in refusing to accept his plea was not authorized under the Michigan Court Rules. Unlike *People v Ott*, 428 Mich 890 (1987), we did not grant leave here limited to the separation of powers issue.

specific sentence disposition or a prosecutorial sentence recommendation . . . ." Thus, the rule plainly grants trial judges the discretion to reject the entire plea agreement, including the underlying plea and the sentence recommendation.[22]

*Killebrew* does not support the conclusion reached by the Court of Appeals that a trial court does not have "the discretion to reject a guilty plea underlying a plea agreement that includes a prosecutorial sentence recommendation." *Grove* at 580. In approving the procedures for plea bargaining recognized in *Killebrew*, and defining the judge's role in those procedures, we held:

> Third, the judge will retain control over sentencing. If the judge feels that the agreement reached by the defendant and government attorney will serve the interests of justice, *he may accept the agreement or recommendation. If, however, the judge, in an exercise of his discretion, finds that the bargain is not appropriate, he is free to reject the plea.* Thus, the judge's sentencing discretion is unhampered. [*Id.* at 211 (emphasis added).]

Nothing in *Killebrew* suggests a limitation on the trial court's option to reject a plea agreement in which the agreement did not provide for a specific sentence disposition. Staff comments to the Michigan Court Rules are not approved by the Court, and are not an authoritative source for their interpretation. See staff comment to MCR 1.101. Moreover, taking the staff comment at face value, a plea such as presented here implicitly conditions the bargain on the court's agreement with the sentence disposition. The operative

---

[22] The dissent fails to acknowledge the fact that the language of the rule plainly authorized the judge's conduct here.

effect of such a bargain increases the constraint on the judge's control over sentencing. In short, the institutional reality is that the recommendation has the same effect as an agreement.

3

In *Killebrew*, while holding that a trial judge may not engage in plea bargaining with the defendant, we explained that there are competing policy considerations involved in the plea bargaining process:

> In balancing these competing considerations—that the degree of [judicial] involvement must be kept minimal to avoid a coercive atmosphere and to retain public confidence in the judicial system and that judicial control of sentencing is required by statute—we now hold that a trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement. He may not engage in the negotiation of the bargain itself. The trial judge's role in the plea-bargaining procedure shall remain that of a detached and neutral judicial official. [*Id.* at 205.]

Thus, we sought to balance the need to protect the defendant from the potential for implicit or explicit coercion by the judge and to protect public confidence in the judicial system with the need to protect the judiciary from attempts to circumscribe its constitutional and statutory sentencing function. In MCR 6.302, we attempted to codify the procedures discussed in *Killebrew*, but neither the case nor the court rule was intended to emasculate the judge's sentencing authority in favor of the parties' right to enter into a plea bargain. We recognize that "[w]here charges are dismissed as bargaining chips, the primary effect is to limit the judge's discretion over the duration of imprisonment." *United States v Pimentel,*

932 F2d 1029, 1033 (CA 2, 1991). A conclusion that the judge is compelled to accept the bargained plea would frustrate the competing policy interests at stake in that it would transfer the trial judge's sentencing discretion to the prosecutor in cases where the plea reduction results in a substantial reduction in the potential range of sentences and would thus erode public confidence in the judiciary.

The United States Supreme Court has recently observed in a unanimous opinion that allowing a defendant an absolute right to withdraw his plea "on a lark," without showing a "fair and just reason" under FR Crim P 32,  after the defendant "has sworn in open court that he actually committed the crimes [and] . . . the court has found a factual basis for the plea" would "debase[] the judicial proceeding at which a defendant pleads and the court accepts his plea," *United States v Hyde*, 520 US ___, ___; 117 S Ct 1630, 1633-1634; 137 L Ed 2d 935 (1997).  So too would a rule *compelling* the judge to accept a defendant's plea despite the judge's awareness of facts that would establish guilt of a crime requiring greater sentencing latitude. Such a rule would not be faithful to the judicial role recognized in *Killebrew* of "a detached and neutral *judicial official,*" *id.* at 205 (emphasis added), but would reduce the judge's role to one of merely providing the court's "rubber stamp" for the defendant's plea, regardless of the level of imposition on the judge's sentencing discretion.[23]

---

[23] In *People v Blue*, 428 Mich 684, 694-695; 411 NW2d 451 (1987),  we observed, with regard to a guilty but mentally ill plea:

"The prosecutor and defendant do not have the right to present the trial court with a *fait accompli*. [T]he judge must be allowed to

4

Legislative recognition of judicial authority in MCL 767.29; MSA 28.969 also supports the conclusion that the judge is not compelled to accept a plea agreement in which there is a prosecutorial sentence recommendation:

> A prosecuting attorney shall not enter a nolle prosequi upon an indictment, or discontinue or abandon the indictment, without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes.[24]

In addition to this Court's express statements in *Killebrew* and in MCR 6.302(C)(3)(a) that the court may reject the plea agreement, including the underlying plea, this statute reflects a legislative understanding of the trial judge's role in ensuring that the public's interest in bringing criminals to justice is not defeated by unconstitutional, illegal, or ultra vires acts by the prosecutor. The authority to impose sentence is vested exclusively in the trial courts. Were the prosecutor and defendant able to compel the trial judge to accept an underlying plea in the presence of a sentence recommendation, no matter how severe the departure from the original charge and its sentencing framework, the interests served by the nolle

---

exercise his discretion; his role is not simply ministerial. The judge is not merely a rubber stamp with which the bargain is sealed."

[24] "All provisions of the law applying to prosecutions upon indictments . . . shall, in the same manner . . . be applied to informations and all prosecutions and proceedings thereon." MCL 767.2; MSA 28.942. "The word 'indictment' includes information . . . ." MCL 750.10; MSA 28.200. See also *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 120, n 10; 215 NW2d 145 (1974).

prosequi statute would be defeated.[25] Moreover, like the nolle prosequi statute, the trial judge's authority to decide whether to accept or reject a plea, while reviewable for an abuse of discretion, encourages the prosecutor to carefully consider the relevant facts when initially exercising prosecutorial charging discretion.[26]

The acceptance of plea bargaining as a systemic necessity in the criminal justice system ultimately rests on reposing adequate sentencing discretion in the trial judge. If sentencing discretion were removed from the equation, or severely constrained, public confidence would be compromised. We hold that under *Killebrew* and MCR 6.302(C)(3)(a), the decision whether to accept or reject a bargained plea, on the basis of whether acceptance of the proffered plea presents an undue interference with the judge's sentencing discretion, given the facts of the individual case, is a proper exercise of the trial court's discretion.[27]

---

[25] Several federal courts have held that the "court's discretion to reject a charge bargain is more akin to its discretion over sentencing matters than to its more limited discretion to refuse to grant a Rule 48(a) motion to dismiss an indictment." *Pimentel, supra* at 1033; see also *United States v Carrigan*, 778 F2d 1454, 1463-1464 (CA 10, 1985).

[26] We note that the dissenting opinion's conclusion would render the nolle prosequi statute meaningless under these circumstances. To the extent the dissent interprets the court rules as superseding the nolle prosequi statute, we disagree. The court rules are rules of procedure, insofar as they regulate the appropriate process. Because the statute is not "inconsistent with a procedure provided by a rule," MCR 6.001(E), the rules should not be read to override the statute. The rules describe the appropriate procedure in plea taking. They do not purport to limit the authority of the court.

[27] We reject the dissent's assertion that our reasoning in *Genesee Prosecutor*, n 24 *supra* at 121, governs these cases. There, with regard to the prosecutor's authority to decide what charges will be instituted against a defendant, we stated, "A circuit judge does not enjoy supervisory power

Our conclusion that, as we stated in *Killebrew*, the judge's sentencing discretion remains "unhampered" by a plea agreement containing a sentence bargain or a sentence recommendation, *id.* at 211, is consistent with federal authorities under FR Crim P 11, which provides for a similar procedure to that of MCR 6.302. In *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971), the Supreme Court stated, "There is, of course, no absolute right to have a guilty plea accepted. . . . A court may reject a plea in exercise of sound judicial discretion."[28] In *United States v Bean*, 564 F2d 700, 704 (CA 5, 1977), the court held, "A decision that a plea bargain will result in the defendant's receiving too light a sentence under

---

over a prosecuting attorney." We remanded the defendant's case for trial on the original information charging the defendant with manslaughter and murder where the judge accepted the defendant's plea of guilty to manslaughter over the prosecutor's objection. While it is true that a prosecutor's determination of what charges to bring is subject to judicial review only for an abuse of power, *id.*, and the judge may not accept a plea and dismiss a higher charge over the prosecutor's objection, the question here is whether the judge may reject a plea to an included offense. The decision to enter a nolle prosequi with respect to an existing charge and reduce the charge pursuant to a plea bargain is a separate matter from the judge's authority to impose a plea on the prosecution. Moreover, although the prosecutors here urged the court to accept the plea, the prosecutors did not object and seek superintending control as did the prosecutor in the *Genesee Prosecutor* cases. See also *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672; 194 NW2d 693 (1972). In those cases, the prosecutor was faced with a direct challenge to his charging discretion, which covers decisions reviewable only for an abuse of power, and the prosecutor sought relief in the nature of mandamus. This case, however, presents an appeal by the defendant, alleging that the judge exceeded his authority under the court rules. We reject that allegation and, as noted above, n 21, the defendant did not have standing to appeal on grounds asserting a violation of the prosecutor's charging discretion.

[28] Moreover, "neither the defendant nor the government is bound by a plea agreement until it is approved by the court." *United States v Washman*, 66 F3d 210, 213 (CA 9, 1995).

the circumstances of the case is a sound reason for a judge's refusing to accept the agreement." The *Bean* court reasoned that "a plea bargain to dismiss charges is an indirect effort to limit the sentencing power of the judge." *Id.* Consistent with that view, the United States Court of Appeals for the Tenth Circuit has held that rejection of a plea is proper under Rule 11 where "[t]he ultimate effect of the dismissal of charges . . . under the plea bargain was to restrict the district court's ability to impose what it considered an appropriate sentence . . . ." *United States v Carrigan*, 778 F2d 1454, 1464 (CA 10, 1985). See also *United States v Moore*, 637 F2d 1194, 1196 (CA 8, 1981) ("a district court is under no duty to consider a negotiated plea agreement . . . [and] rejection of the proposed guilty plea [even without articulating reasons] was not beyond the scope of its broad discretion"); *United States v Crowell*, 60 F3d 199, 205-206 (CA 5, 1996) ("A district court's rejection of a plea agreement is reviewed only for abuse of discretion [and a] court may properly reject a plea agreement based on undue leniency"); *United States v Brubaker*, 663 F2d 764, 768 (CA 7, 1981) (restriction on the trial court's sentencing discretion is a permissible consideration in exercise of the court's discretion to reject a plea agreement).[29]

---

[29] In light of our agreement with these authorities, we also reject the dissent's assertion that the case "does not concern the authority of the trial judge to reject a plea because of disagreement with the prosecutor's sentence recommendation." *Post* at 482. Rather than viewing the judge's role as that of a "superprosecutor," *id.* at 477, we view the judge's role as set forth herein to be consistent with the concept of checks and balances that informs our system of government.

6

Here, the prosecutor agreed to dismiss the more serious CSC I and CSC II charges in exchange for a guilty plea of CSC IV. The trial judge articulated the following reasons when he rejected the proffered plea agreement, including the underlying plea:

> [T]he victim recommended prison time and the cap as recommended by the prosecutor would not allow for prison time. . . . I do not feel it would be in the interest of justice. I feel that there is such a wide disparity between what the victim claims had happened, as opposed to what the Defendant claimed had happened, and the victim's desire of a prison term that it would not be fair and in the interest of justice to accept this matter plea bargained to fourth degree. . . . [T]he Defendant, if found guilty, should be sentenced appropriately under the charge he was found guilty on or pled guilty to as the case might be.[30]

We conclude that the judge did not abuse his discretion in rejecting the entire plea agreement, including the underlying plea, for these reasons. The judge's reasoning reflected his understanding of the plea agreement, considering the facts and the interests of the victim, as a substantial hinderance of his ability to impose an appropriate sentence under the plea bargain where the offense to which the defendant agreed

---

[30] The dissent implies that the Court's decision was made "solely on the basis of its subjective view of what is just." *Post* at 481. We disagree. The judge clearly considered the sentencing implications of the prosecutor's recommendation when he spoke of the victim's desire for prison time and the fact that the recommendation would remove the discretion to impose a sentence that included prison time. Thus, the judge reached the conclusion that the plea agreement would result in a miscarriage of justice because of the undue interference with his sentencing authority that the plea agreement presented. Moreover, the trial court's "subjective view of what is just" is necessarily implicated in the proper performance of its responsibilities, just as it is in the charging decision of the prosecution.

to plead guilty, CSC IV, is a two-year maximum mis-
demeanor, while the originally charged offenses
(CSC I) were subject to a sentence of life or any term
of years. The judge's actions were consistent with
MCL 767.29; MSA 28.969 and our analysis in *Kille-
brew*, and were authorized under MCR 6.302(C)(3).
Thus, we reverse the decision of the Court of Appeals
and reinstate the defendant's convictions.

### B. *PEOPLE v AUSTIN*

#### 1. THE PLEA CUTOFF DATE

As noted above, the trial judge refused to accept
the defendant's plea because it was presented over a
month after the plea cutoff date and one day before
trial was to begin. MCR 6.302 is not implicated by this
rejection. We conclude that rejection of a tardy plea
is within the discretion of a trial court.

a

The Court of Appeals held that the trial court has
the discretion to adhere to its scheduling orders
under the court rules:

According to MCR 6.301(A), a court may refuse to
accept a defendant's plea "pursuant to the rules." MCR
6.001(D) provides that the rules of civil procedure apply to
criminal cases. Further, MCR 2.401(B)(1)(b) establishes
that a trial court may enter a scheduling order setting time
limitations for the processing of a case. Reading these rules
together, it is clear that the trial court had the authority to
reject a plea that was entered into after the date set forth in
the scheduling order. MCR 2.401(B)(1)(b).

We note that this interpretation of MCR 6.301(A) is in
harmony with MCR 6.002, which states that these rules
"are to be construed to secure simplicity in procedure, fair-
ness in administration, and the elimination of unjustifiable
expense and delay." Furthermore, this construction of MCR

6.301(A) recognizes the trial court's authority to control its
docket. See *People v Dowell*, 199 Mich App 554; 502 NW2d
757 (1993). In this case, defendant and the prosecutor
reached a plea agreement one day before trial; more than
one month after the May 13, 1991, cutoff date. The trial
court's refusal to accept defendant's plea agreement
enhanced its docket control, eliminated unjustifiable
expense and delay, and was, therefore, proper. [209 Mich
App 567.]

We agree with the Court of Appeals. The court
rules provide for and encourage the use of scheduling
orders to promote the efficient processing of civil and
criminal cases. Although the Michigan courts have
not had occasion to address the issue, federal and
state case law supports the conclusion that the judge
has discretion under these circumstances.[31]

---

[31] We reject the dissent's interpretation of the federal authorities. The
dissent supports its conclusion that "[t]he trial court abused its discretion
by rejecting the plea agreement," *post* at 492, with reference to *United
States v Shepherd*, 322 US App DC 160; 102 F3d 558 (1996), *United States
v Robertson*, 45 F3d 1423 (CA 10, 1995), and *United States v Moore*, 916
F2d 1131 (CA 6, 1990). We perceive no inconsistency between our hold-
ing today and the principles discussed in these cases. The dissent
observes that the defendant in *Shepherd* "agreed to plead as charged" in
exchange for the possibility that the departure committee would make a
departure recommendation under the mandatory Federal Sentencing
Guidelines. *Post* at 489. The court's decision that rejection was inappropri-
ate merely demonstrates that where the defendant is prepared to plead
"on the nose" and the prosecutor accepts the plea, all public concerns
have been vindicated. We note that the *Shepherd* court acknowledged the
fact that consideration of the lateness of the defendant's plea was a
"proper factor" for the court to consider in deciding whether to accept the
plea. *Id.* at 164. In *Moore* and *Robertson*, the circuit courts refused to rec-
ognize the validity of judicial refusal to accept a plea where the sole rea-
son for such refusal was that it came on the day of trial, *Moore* at 1136,
n 11, or that it came so close to trial that the court could not schedule
other matters, *Robertson* at 1438. However, these cases support our deci-
sion here. In *Robertson*, the court specifically limited its holding "under
the facts of [the] case," *id.* at 1439, and referenced *Moore* at 1136, n 11,
characterizing that case as standing for the proposition that *"when no
plea cutoff date has been missed* and 'the Government makes its first plea

b

Like the court in *United States v Ellis*, 547 F2d 863, 868 (CA 5, 1977), we find that "the deference due the prosecutorial prerogative and the rights of the defendant under [the court rules are] outweighed by judicial discretion to control the scheduling of trial procedures in ongoing prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses." In *Ellis*, the court affirmed the district judge's decision to adhere to a plea cutoff date when the defendant and prosecutor presented it only one day late. *Id.* The *Ellis* court relied on an earlier unpublished decision in which the court approved of a judge's adherence to a plea cutoff date, describing that case as follows:

> [T]he judge reasoned that strict adherence . . . was necessary for proper scheduling of cases to save time, difficulty and expense to jurors and witnesses who would otherwise have to be summoned needlessly to attend court sessions. He refused to vary the deadline date because the United States attorney was overworked or understaffed. He

---

offer to a defendant the morning of trial and defendant accepts, the rejection of the plea under those circumstances *may* well constitute an abuse of discretion.' " *Robertson* at 1438 (emphasis added). Indeed, the *Moore* court stated:

> Our remand on this issue is not intended to mean that rejecting a plea because it comes too late may not be a proper exercise of discretion. The problem here is that we are simply unable to ascertain from the trial judge's brief comments the precise reason why this plea was rejected. *If a trial judge sets a plea cut-off date and a plea is not offered prior to that time, the trial judge may well be justified in rejecting the plea.* [*Id.* at 1136, n 11 (emphasis added).]

Unlike *Moore* and *Robertson*, the plea attempted here came in violation of the plea cut-off date under a scheduling order of which the parties had ample notice and to which they had previously agreed. Thus, the concern reflected by these courts for *arbitrary* rejection of pleas offered near trial is not implicated in this case.

concluded that if he varied the date from his deadline because of this office's workload, he would also have to consider variations for defense counsel similarly situated, with the result that the deadline would become meaningless. [*Id.* at 868.]

Likewise, *People v Cobb*, 139 Cal App 3d 578; 188 Cal Rptr 712 (1983), demonstrates that, having considered this problem, the California courts have granted trial judges broad discretion in deciding whether to accept tardy plea agreements. The court described the rationale behind allowing plea cutoff dates as follows:

Generally, such deadlines are supported as a means of reducing the confusion, hardship and inconvenience inherent in calling calendars. The priority of the criminal calendar and the frequency of pleas in lieu of trials often place civil litigants in a trailing position, which on trial day is at best an uncertain one. When pleas are taken at this time, the practice may well have a domino effect on other cases. It may leave courtrooms vacant if the calendar judge has failed to overschedule trials. Excusing unused jurors or, when expected pleas do not materialize, announcing there are insufficient judges or courtrooms for the balance of the calendar, is an unpleasant judicial task. [*Id.* at 581.][32]

---

[32] The nature of the system frequently results in instability and inconvenience in managing the civil trial docket, producing such inefficient systems as a trailing civil docket. MCL 768.1; MSA 28.1024 grants the parties in criminal cases the right to a "speedy trial . . . without delay except as may be necessary to secure to the accused a fair and impartial trial." MCL 780.759; MSA 28.1287(759) and MCL 780.786a; MSA 28.1287(786a) further provide a statutory right to a speedy trial of the defendant for certain victims, including victims of child sexual abuse and CSC I, II, and III. Moreover, bond requirements under various criminal statutes and other procedural imperatives may dictate organizing the civil docket around criminal cases. Like civil discovery deadlines, plea cutoff dates allow trial courts to assign true trial dates, which in turn produce prompt resolution of cases that should settle. Thus, counsel and parties in both civil and criminal cases benefit from real trial docketing.

The rule varies in California depending on the county and the judge.[33] However, the California Court of Appeals specifically approved the rule adopted in Fresno County, where "ultimate management of the criminal calendar is in the hands of the presiding judge . . . ." *Id.*

In *Cobb*, the defendant and the prosecutor presented a plea bargain to three different judges, all of whom refused to consider the plea offered because, as in the instant case, the parties presented it after the time scheduled for the taking of pleas. *Id.* at 582. Like the federal rule and the Michigan rules cited by the Court of Appeals, the California rules, while providing " 'guidelines which the trial court can utilize in receiving and considering plea bargains involving pleas to lesser offenses[,]' [contain] no reference to the court's discretion to refuse to consider such a plea at all, or within certain time limits."[34] *Id.* at 584. The *Cobb* court, citing *Ellis, supra,* observed:

> It appears that the competing interests of accurately scheduling court calendars and judiciously taking pleas to avoid trial can be accommodated while reasonably restricting pleas to certain time periods. The purpose of improving calendar management justifies the setting of deadlines

---

[33] The court rejected the assertion by a dissenting judge that the California courts allowance for varied plea bargaining procedures posed an equal protection problem, concluding that plea bargains "are subject to reasonable time constraints on their delivery to the court." *Id.* at 587.

[34] This Court, however, has published Administrative Order No. 1991-4, Time Guidelines for Case Processing, which provides general time guidelines to assist courts in processing cases expeditiously. These broad guidelines represent public policy consistent with allowing trial judges to tailor more specific scheduling deadlines in individual cases in an attempt to reach the goals set out by the guidelines. Simply put, the earlier cases are pleaded out, the more likely it is that the system will conform to the guidelines; and the only way a trial court can encourage early pleas is by firm adherence to deadlines.

beyond which no conditional plea may be taken. [*Cobb* at 585.][35]

c

The Court of Appeals analysis of the applicable court rules was correct. We hold that a judge is within his discretion in refusing to entertain a tardy plea agreement. The rules of civil procedure apply in criminal cases pursuant to MCR 6.001(D). Under MCR 2.401(B)(1)(b), the trial judge may "enter a scheduling order setting time limitations for the processing of the case and establishing dates when future actions should begin or be completed in the case." Taken together, these rules implicitly confer the discretion to decline to entertain actions beyond the agreed time frame. Were the rules not so construed, scheduling orders would quickly become meaningless.[36]

---

[35] The court further concluded that under subsection 10(a)(7) of the California Standards of Judicial Administration, the period in which pleas could be rejected as tardy was limited to "that reasonable time which follows the readiness conference and ends upon the completion of trial." *Cobb* at 585. That standard explicitly provides that courts "should adopt a rule or policy providing that the readiness conference is the last possible point of negotiation and that thereafter a defendant may plead only to the principal charge against him." *Id.* at 582. Although no such standard has been promulgated in Michigan, the *Cobb* court concluded the trial court's discretion to set the calendar deadline and adhere thereto existed independently of the standard, but was limited thereby. Moreover, the court held "that the standard does not preclude the exercise of discretion at any time under exceptional circumstances." *Id.* at 585.

[36] Therefore, we reject the dissenting opinion's conclusion that our decision "inflates the role of day-to-day procedural matters contrary to [our] directive in *Higgins*." *Post* at 492. The dissent's conclusion that our decision elevates docket control "above the substantive rights of the parties," *id.* at 490, fails to acknowledge that neither this Court nor the United States Supreme Court has recognized that the parties have a right to present a plea. *Santobello, supra* at 261-262. Moreover, we fail to discern any inconsistency between our decision here and *Higgins v Henry*

Given the above-noted statement from *Santobello*,
that there is "no absolute right to have a guilty plea
accepted . . . [and that a] court may reject a plea in
exercise of sound judicial discretion," *id.* at 261-262,
we find the reasoning offered by these state and fed-
eral authorities persuasive. Optimum service to the
public, to victims, witnesses, jurors, litigants, and to
counsel mandates that trial judges have the authority
and discretion to manage dockets. The interplay
between MCR 2.401 and MCR 6.001 provides for
such efficient management, while allowing judges the
flexibility to exercise their discretion appropriately,
given the circumstances of an individual case. Such a
decision will only be overturned for an abuse of
discretion.

d

The parties were aware of the scheduling order and
agreed to the dates set therein at the scheduling con-
ference. However, the parties offered the plea over a
month after the plea cutoff date. Counsel for the
defendant offered three reasons why the plea agree-
ment was tardy: First, the prosecutor did not offer the
plea until the day before trial. Second, the statements

---

*Ford Hosp*, 384 Mich 633, 637; 186 NW2d 337 (1971), a civil case in which
the Court ruled that the trial court's acceptance of an amended complaint
after entry of an order of dismissal for no progress "in fact and in law
reinstated the case." The dissent references the committee comment to
GCR 1963, 13. GCR 1963, 13 was replaced in 1985 with MCR 1.105,
which this Court adopted without the commentary referenced by the dis-
sent. We do not question the validity of MCR 1.105 or the comment to its
predecessor, GCR 1963, 13. On the contrary, we conclude that our deci-
sion here construes the court rules, when considering the case in the
overall context of our system for the administration of justice, "to secure
the just, speedy, and economical determination of *every* action and to
avoid the consequences of error that does not affect the substantial rights
of the parties." MCR 1.105 (emphasis added).

certain witnesses to the crimes charged gave to the police were not consistent with the statements they had earlier given to defense counsel in that they alleged more serious offenses when given to the police. Third, the plea negotiations included the CSC IV charge for which the plea cutoff date had not yet passed. The prosecutor confirmed these statements, but did not attempt to persuade the judge to entertain the plea agreement.

The judge believed that two and one-half months was sufficient time to negotiate a plea, and he recognized that he had the discretion to accept the plea despite its tardiness. He entertained defense counsel's arguments in favor of the plea agreement, but apparently determined that the need to adhere to the scheduling policy outweighed the considerations asserted by the parties. We find nothing in the record to indicate the judge abused his discretion in reaching this decision. The defendant has only an opportunity, not a right, to plead guilty. No right is denied when the opportunity is not timely exercised. Defendant has the right to a fair trial of the offense charged.

### 2. JUROR MISCONDUCT

Defendant argues that the juror in question was not impartial because he was exposed to a newspaper article referencing another charge against the defendant, which made the juror view the defendant differently so that it was harder for him to change his mind about the defendant. The Court of Appeals concluded that the defendant was not prejudiced because the juror did not read the article, did not share it with the rest of the jury, and testified that his decision was

based on all the evidence rather than on the contents
of the newspaper article.

a

The issue before the trial judge was whether the
defendant's exposure to the information in the news-
paper article prejudiced the defendant. 23A CJS,
Criminal Law, § 1441, p 386. The general rule in these
cases may be stated as follows:

> Whether or not prejudice warranting a new trial results
> from the reading by the jurors of news articles or seeing or
> hearing broadcasts must turn on the special facts of each
> case, and the question is left largely to the determination
> and discretion of the trial court.

See also *People v Flinnon*, 78 Mich App 380, 391; 260
NW2d 106 (1977). This rule reflects the fact that "due
process does not require a new trial every time a
juror has been placed in a potentially compromising
situation." *Smith v Phillips*, 455 US 209, 217; 102 S Ct
940; 71 L Ed 2d 78 (1982). In *Smith*, the Supreme
Court explained further:

> Were that the rule, few trials would be constitutionally
> acceptable. The safeguards of juror impartiality, such as
> *voir dire* and protective instructions from the trial judge,
> are not infallible; it is virtually impossible to shield jurors
> from every contact or influence that might theoretically
> affect their vote. Due process means a jury capable and
> willing to decide the case solely on the evidence before it,
> and a trial judge ever watchful to prevent prejudicial occur-
> rences and to determine the effect of such occurrences
> when they happen. [*Id.*]

b

In this case, when asked whether the information caused him to look at the defendant differently or if it made it harder for him to change his mind about the defendant, the juror's testimony was equivocal. The juror testified in relevant part:

> *Q.* Were you made aware of the fact through your wife or otherwise that my client, Mr. Austin, had other charges pending?
>
> *A.* Yes. . . .
>
> *Q.* Okay. And were you informed by your wife or otherwise, as a result of the article, that Mr. Austin was . . . in jail during the trial?
>
> *A.* No. She didn't add anymore. In fact, I cut her off. I just said, "You aren't supposed to be doing this."
>
>                 *      *      *
>
> *Q.* . . . [W]hen you heard these comments through your wife about Mr. Austin having other charges, how did that affect you in terms of how you thought about him?
>
> *A.* Well, I kind of really had my mind made up by then already before I ever got home—before I saw his side of the story.
>
> *Q.* That was . . . after the first day of trial?
>
> *A.* The first afternoon, yes.
>
> *Q.* Okay. When you went to the jury room to deliberate after the close of the trial, which was the second morning, did you think about that information at all that you heard from your wife? Did that cross your mind at all, do you know?
>
> *A.* No, I don't think it did.
>
> *Q.* Did you mention to any of the other jurors that there was an article in the paper?
>
> *A.* No, I never did.
>
> *Q.* Did you discuss . . . in the jury deliberations . . . other charges pending?
>
> *A.* No.

*Q.* Now, . . . one of the general instructions the jurors were given was to not make a decision until [you hear] all the evidence. . . .

*A.* Right. Yes.

*Q.* You just told me a few minutes ago that you made your mind up the first day. Did you ignore what you heard the second day?

*A.* No . . . .

\* \* \*

*Q.* Can you . . . describe the circumstances . . . ?

*A.* Yes. My wife was sitting . . . in front of the TV reading the paper . . . . And when she got done, she just mentioned the fact that he was up for a couple of other [rape] counts, or admitted to it, or something like that.

\* \* \*

*Q.* If you had heard something to have impacted your mind the following day of the trial, would the statement from your wife have caused you to ignore the other evidence?

*A.* I don't think so.

\* \* \*

*Q.* [O]nce your wife started discussing this information. [W]hat happened then?

*A.* I kind of just told her that I wasn't supposed to hear any of that stuff. I wasn't supposed to watch the news, which I had never informed her before . . . . And it was just dropped right there.

\* \* \*

*Q.* After you heard about the other charges against Mr. Austin, did that cause you to look at him differently . . . ?

*A.* I think so. A little.

*Q.* Did that confirm . . . the decision you said you already pretty much made?

*A.* Mm-hmm. Yes.

.

*Q.* Yes. And that would have made it harder for that opinion to be changed the next day, do you think?

*A.* Yes, I guess so.

\*       \*       \*

*Q.* [I]n your jury deliberation, did you consider the information that your wife stated to you on Tuesday night?

*A.* No, I didn't.

\*       \*       \*

*Q.* [Did you consider] both the evidence from the first day . . . and the second day . . . and only that evidence as the basis of your decision as a juror among jurors?

\*       \*       \*

*A.* Yes.

\*       \*       \*

*Q.* Was your decision in any way influenced by the comment that your wife had made . . . ?

*A.* No.

\*       \*       \*

*Q.* Did you allow that comment from your wife to impact the decision that you made or try to influence other jurors?

*A.* No.

In addition, the jury foreman testified that the juror engaged in deliberations did not appear to have a preconceived notion of guilt, and did not share the information with any other jurors.

c

We agree with the Court of Appeals that the defendant was not prejudiced by this juror's exposure to inadmissible evidence and that the trial judge did not abuse his discretion in declining to declare a mis-

trial on defendant's motion. The juror appears to have equivocated when asked whether the information affected his view of the defendant, but he steadfastly maintained that he reached his decision on the basis of the evidence and not on the basis of his wife's comment. The juror immediately prevented his wife from giving him details and remained faithful to his duty to weigh the evidence in deliberations.[37] Moreover, the judge instructed the jury, pursuant to its oath, "to return a true and just verdict based only on the evidence and [the court's] instructions on the law," and "not [to] use any personal knowledge that you may have about a place, person, or event. . . . [Y]ou must decide this case only on the evidence admitted at trial." Thus, we conclude that the juror was not biased because he heard his wife's comments.

The judge heard the evidence in the trial and observed the demeanor of the witnesses during the motion for mistrial. He listened to counsel and rendered his decision on the basis of the evidence. We find no evidence in the record that the judge abused his discretion in deciding that the defendant was not prejudiced by the presence of this juror. The judge correctly noted that when a juror states during voir dire that information heard about the case can be set aside, such information is not sufficient grounds to

---

[37] We reject defendant's assertion that the juror's having "made up" his mind after the first day of trial denied defendant a fair trial. The attempt to form and reach conclusions about the evidence during the course of a trial is a natural part of the human thought process with which every juror must struggle in reaching a verdict. It would be illogical to expect jurors to suspend normal thought processes when hearing the evidence. At most, the effect of the statement is to admit that, with regard to this juror, the prosecutor sustained his burden of proof when he finished presenting his case on the first day.

dismiss the juror for cause under MCR 2.511(D)(3) and (4). The record gives every indication that, although the juror heard the information and was initially affected by it, he was able to set that information aside and render a decision solely on the basis of the evidence presented.

### III. CONCLUSION

In *People v Grove*, we reverse the decision of the Court of Appeals and reinstate the trial court's conviction. In *People v Austin*, we affirm the Court of Appeals decision except with regard to the presentence report. On remand, the trial court shall delete the letters from Sergeant Harris dated June 27 and 28, 1991, from the presentence report consistent with MCR 6.425(D)(3). We do not retain jurisdiction.

MALLETT, C.J., and BRICKLEY, RILEY, and WEAVER, JJ., concurred with BOYLE, J.

KELLY, J. I respectfully dissent. In *Grove*, I disagree with the majority's holding that the trial court had the discretion under MCR 6.302(C)(3) to reject defendant's guilty plea. I would find that the trial judge acted as a superprosecutor when he refused to accept defendant's plea and sentence bargain despite objections from both the prosecution and the defense. His refusal violated the Michigan Court Rules and defendant's constitutional rights, and was an abuse of discretion.

In *Austin*, I disagree with the majority's holding that the trial court's rejection of a plea agreement was not an abuse of discretion. I would find that the judge had no authority to reject the plea agreement simply because it was entered into after the court's plea cut-

off date. I would vacate defendant's convictions and
remand for entry of the original negotiated plea.

I would also find that defendant Austin was
prejudiced by the alleged juror misconduct, although
my position regarding the plea agreement would
render the issue moot. Finally, I agree with the major-
ity that the letters from Sergeant Harris dated
June 27 and 28, 1991, must be deleted from the
presentence report.

### PEOPLE v GROVE

I

Defendant Richard Grove was charged with com-
mitting two counts of first-degree criminal sexual
conduct[1] and one count of second-degree criminal
sexual conduct[2] perpetrated on his thirteen-year-old
daughter. He pleaded guilty of one count of criminal
sexual conduct in the fourth degree.[3] Defendant and
the prosecutor agreed to a plea bargain that provided
for the prosecution to withdraw the original charges
and recommend defendant be sentenced to the
county jail. The judge complied with MCR 6.302,
established a factual basis for the plea, and took the
matter under advisement.

After meeting in chambers with all counsel on the
date set for sentencing, the trial judge rejected
defendant's plea agreement over the objections of
both the prosecution and the defense. He acknowl-
edged that the prosecutor had urged him in chambers

---

[1] MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).

[2] MCL 750.520c(1)(a); MSA 28.788(3)(1)(a).

[3] MCL 750.520e; MSA 28.788(5).

to accept the agreement because of difficulties in proving the case.[4]

The prosecutor also acknowledged on the record that he was prepared to honor the plea and sentence bargain. The defense counsel urged the judge to reconsider and to accept the plea agreement. He objected to the decision not to sentence defendant as scheduled. The judge ruled:

> Very well. The Court then is ruling as follows: I reject the plea bargain as tendered to the Court. I feel this is a valid exercise of the Court's discretion in this matter. I feel there is too great a disparity between the facts as the victim alleges them to be, versus the Defendant's version as to what happened. I feel that justice would require this matter to be rejected from the fourth degree level which is of a fairly inconsequential nature, if in fact the victim is correct. If in fact the Defendant is correct and the victim has essentially fabricated a great deal of this material that he should be vindicated at trial and the victim be subject to whatever impeachment that may come her way, if she has in fact recanted on this story from time to time. The Court does not feel that it should be involved in this plea bargain effort, that it would give an appearance at least of any quality to all sides, both the Defendant and the victim.

Thus the judge substituted his assessment of the people's case for that of the prosecution, functioning as both judge and prosecutor. It was an abuse of his discretion.

---

[4] A key reason the prosecutor urged the judge to accept the plea was because the victim had recanted her story and could be impeached at trial.

II

The right of a court to refuse a plea bargain is now governed by MCR 6.301, which superseded MCR 6.101(F). It states:

Rule 6.301 Available Pleas

(A) Possible Pleas. Subject to the rules in this subchapter, a defendant may plead not guilty, guilty, nolo contendere, guilty but mentally ill, or not guilty by reason of insanity. If the defendant refuses to plead or stands mute, or the court, pursuant to the rules, refuses to accept the defendant's plea, the court must enter a not guilty plea on the record. A plea of not guilty places in issue every material allegation in the information and permits the defendant to raise any defense not otherwise waived.

(B) Pleas That Require the Court's Consent. A defendant may enter a plea of nolo contendere only with the consent of the court.

The staff comment on the rule is illuminating and relevant.[5] MCR 6.301(A) and (B) superseded MCR 6.101(E) and (F), which required that the court consent before a defendant be permitted to plead guilty. The comment reveals the reason for the change:

The second sentence of subrule (A) is a modified version of former 6.101(E)(1). It allows a court to refuse to accept a defendant's plea, but only "pursuant to the rules." The quoted phrase refers to pleas that can be refused (1) because they require the court's consent (pleas in nolo contendere and the pleas described in subrule [C]) or (2) because they fail to comply with a requirement of the rules

---

[5] The majority correctly points out that, as staff comments are not approved by the Supreme Court, their interpretations are not authoritative sources. They can provide illumination, however, as in this instance.

Moreover, the majority itself points out the intended purpose of MCR 6.302: to codify the procedures set forth in *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982). The 1989 staff comment discusses that point.

in this subchapter. The last sentence of subrule (A) is a sty-
listically revised version of former 6.101(E)(2).

   Subrule (B) is a modification of a provision in former
6.101(F). The former rule provided that the court's consent
was required before a defendant would be permitted to
plead guilty or nolo contendere. Subrule (B) has deleted the
requirement for the court's consent to a plea of guilty. *The
consent provision in the former rule has been construed as
giving the trial court the discretion to refuse to accept a
guilty plea because of disagreement with the plea bargain
agreed to by the prosecutor and the defendant. See People v
Ott, 144 Mich App 76 [372 NW2d 694] (1985). Accord-
ingly, deletion of the consent provision indicates that the
trial court may not refuse to accept a guilty plea based
solely on disagreement with the wisdom of the plea, of the
charge, or of the plea bargain, unless the bargain is condi-
tioned on the court's agreement to some provision, such as
sentence disposition. See 6.302(C)(3).* As is noted in sub-
rule (A), however, the court may refuse to accept a plea
based on noncompliance with a requirement in these rules.
[Emphasis added.]

The emphasized portion supports the defendant's con-
tention that the trial court may not refuse to accept a
guilty plea solely on the basis of its subjective view of
what is just.

   MCR 6.302(C)(3)  lays out the procedure the trial
judge must use in accepting or rejecting sentence bar-
gains. As amended, it clarifies the sentence-bargaining
procedures announced in *Killebrew*[6] that prohibit a
judge from involvement in the plea-bargaining pro-
cess. Its effect is to limit the judicial role to accepting
or rejecting the bargain.[7] If the court rejects the sen-
tencing recommendation, *Killebrew* requires it to

---

[6] N 5 *supra* at 209.

[7] *Id.*

inform the accused what sentence it would impose and give defendant the option to accept that sentence. *Id.* at 207; see also MCR 6.302(C)(3).

The issue here is whether a trial judge has the authority to block a defendant's plea to a reduced charge absent a determination that the prosecution has abused its discretion. It does not concern the authority of the trial judge to reject a plea because of disagreement with the prosecutor's sentence recommendation.

In the present case, the judge invaded the province of the prosecutor, essentially dismissing the people's new information and placing the original charges back on the trial docket. His actions violated the plea-taking procedures adopted by the new court rules and enunciated by this Court in *Killebrew* and its progeny. The majority suggests that I have failed to acknowledge that the language of the rule authorizes the judge's conduct in this case. I believe that it does not. The rule specifies that the judge's choices are to accept a plea, reject it, or take it under advisement. In this case, the judge took it under advisement. The majority glosses over the procedures that the rule requires a judge follow after making that decision.

The last paragraph of MCR 6.302(C)(3) states:

> If the court accepts the agreement without having considered the presentence report or takes the plea agreement under advisement, it must explain to the defendant that the court is not bound to follow the sentence disposition or recommendation agreed to by the prosecutor, and that if the court chooses not to follow it, the defendant will be allowed to withdraw from the plea agreement.

This language is taken from *Killebrew*. In it, "agreement" refers to the sentence agreement rather than to the underlying plea bargain. A defendant is entitled either to accept the sentence that the court would impose under the plea agreement or to withdraw from the plea agreement entirely.[8] The judge must follow the rules. When a plea is taken under advisement, the court is obliged to explain to the defendant that it is not bound to follow the sentence recommendation and allow defendant to withdraw the plea. In this case, the judge failed to follow that rule, and instead trumped the prosecution's charging power.

While the court rule indicates that a trial court's consent is required with respect to the sentence, it does not confer authority on the court to interfere with the prosecutor's charging power. In *Genesee Prosecutor v Genesee Circuit Judge*,[9] where we held that the trial judge acted without authority in amending the information over the objection of the prosecutor, we observed:

> "Acting as prosecutor, judge and jury" is a common description of an unfair and unlawful operation. However innocently and mistakenly, this is what happened in this case. The trial judge assumed the right over the objection of the prosecutor to determine under which of two applicable statutes a prosecution will be instituted. As already indi-

---

[8] The Court stated in *People v Siebert*, 450 Mich 500, 515; 537 NW2d 891 (1995), that the trial court "erred when it failed to announce the sentence it intended to impose and then allow the prosecution to withdraw consent to the plea agreement."

In addition, the majority relies on *People v Blue*, 428 Mich 684; 411 NW2d 451 (1987), to support its conclusion. However, in *Blue*, the Court's decision was based on the court rules that were changed with the adoption of MCR 6.301 and MCR 6.302 in 1989. Therefore, *Blue* is distinguishable from the case at hand.

[9] 386 Mich 672, 683-684; 194 NW2d 693 (1972).

cated such determination is an executive function and a part of the duties of the prosecutor. For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers. Const 1963, art 3, § 2. It also violates our fundamental sense of fair play.

We again addressed whether a circuit judge can exercise supervisory authority over a prosecutor in *Genesee Prosecutor II*,[10] stating:

A circuit judge does not enjoy supervisory power over a prosecuting attorney. He may reverse a magistrate's decision only for abuse of discretion. He may not properly substitute his judgment for that of the magistrate or prosecuting attorney as if he were reviewing the magistrate's decision de novo or acting in a supervisory capacity with respect to the prosecuting attorney. He may reverse or revise their decisions only if it appears on the record that they have abused the power confided to them.

Without question, a prosecutor has broad discretion in determining which charges to bring against a defendant. A circuit judge may not usurp authority vested in the prosecutor to determine what charges are brought against a defendant, except as explicitly provided by law.[11] *People v Williams*, 186 Mich App

---

[10] *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 121; 215 NW2d 145 (1974).

[11] The majority states that the conclusion I draw would render the nolle prosequi statute meaningless. This is incorrect. "The general rule is that only the prosecutor has the authority as part of the executive function to initiate a nolle prosequi, though entry of the order is subject to the approval of the courts." *People v Williamson*, 138 Mich App 397, 399; 360 NW2d 199 (1984). See also *Genesee Prosecutor II, supra* at 121.

It is recognized that in limited circumstances a trial court may enter a nolle prosequi on its own, but *only* when there has been an abuse of prosecutorial discretion. *Williamson, supra.* In this case, there has been no claim of prosecutorial abuse of discretion. The judge's sole reason for

606; 465 NW2d 376 (1990); *People v Monroe*, 127 Mich App 817; 339 NW2d 260 (1983). Judicial modification of prosecutorial decisions is appropriate only if the decisions are unconstitutional, illegal, ultra vires, or an abuse of prosecutorial authority. *Genesee Prosecutor I* and *II*, *supra* at 683, 121.

In the case at hand, *there was no finding that the prosecutor exceeded his authority or abused his discretion.* Both the prosecution and the defense evaluated the likelihood of success at trial and concluded that their respective interests would best be served by a compromise plea agreement. The judge disagreed, rejected the entire agreement, and reinstated the original charges because of his assessment of the case.[12] This is disallowed by the court rules and the case law.

Because both parties were willing to abide by their agreement, I would affirm the decision of the Court of Appeals, remanding for further proceedings pursuant to *Killebrew, supra.* If the trial judge rejects the sentence bargain, then he should state what sentence

---

rejecting the plea in this case related to his assessment of the case. Furthermore, MCR 6.001(E) supports that proposition. The trial court rejected the plea without finding abuse of discretion on the part of the prosecutor. Consequently, the judge lacked grounds to justify rejecting the plea over the prosecutor's objection. *Id.* at 400.

[12] The majority states that defendant has no standing to appeal on grounds asserting a violation of the prosecutor's charging power. I disagree. Defendant has standing to object to violations of the court rules and the constitution, including the separation of powers doctrine. Defendant entered into an enforceable agreement with the prosecutor, which would entitle him to specific performance, notwithstanding the fact that the breach had been committed by the trial court. See *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971); *Guilty Plea Cases*, 395 Mich 96, 127; 235 NW2d 132 (1975).

With respect to the majority's proposition in footnote 29, here the judge's behavior was inconsistent with the concept of checks and balances.

he would impose and defendant should be given the option to accept or reject it. In the alternative, defendant would have the option to withdraw his plea. *Killebrew, supra* at 210. I agree with the majority that the trial judge considered the sentencing implication of the prosecutor's recommendation. However, after reaching the conclusion that the plea agreement resulted in a miscarriage of justice, he was bound to follow the court rule and give defendant the above-stated options. He violated the court rule when he failed to do so.

Therefore, I would hold that the trial judge did not have the authority to refuse to accept the guilty plea. To rule otherwise allows the judge to act, not only as judge, but as jury and prosecutor as well, a practice condemned by this Court. *Genesee Prosecutor I* and *II, supra* at 683, 121.

### PEOPLE v AUSTIN

I

In this case, we granted the application for leave to appeal in order to decide: (1) whether the trial court abused its discretion by refusing to accept a plea agreement because it was made after the court's plea cutoff deadline, (2) whether the trial court abused its discretion in denying defendant's motion for a mistrial on the basis of juror misconduct, and (3) whether the case should be remanded to the trial court for correction of the presentence report. In regard to (1), I would reverse the decision of the Court of Appeals and remand for entry of defendant's negotiated plea as offered. In regard to (2), I would hold that the issue of juror misconduct is moot. In (3), I agree with

the majority that the letters from Sergeant Harris be deleted from the presentence report.

A

Defendant in this case was charged with two counts of first-degree criminal sexual conduct.[13] The day before trial, the prosecutor and the defense counsel reached a "reduced" plea agreement. Under the agreement, defendant agreed to plead guilty of two counts of criminal sexual conduct in the third degree[14] and one count of criminal sexual conduct in the fourth degree.[15] In exchange, the prosecutor agreed to drop the original charges and to not pursue an habitual offender charge or second offense charges. The judge refused to allow defendant to plead guilty to the lesser charge because his "plea cutoff date" had passed.

Defense counsel objected, advancing three arguments: (1) the prosecutor did not offer defendant the plea agreement until the day before trial; (2) two prosecution witnesses' statements to the police were more damaging to the defense than earlier revealed; (3) the "plea cutoff date" regarding the CSC IV change had not passed. The prosecutor *confirmed* the accuracy of defense counsel's statements. However, the judge was unpersuaded. Defendant went to trial and was convicted as originally charged.

As was discussed above in *Grove*, the current Michigan Court Rules provide well-defined circumstances in which a trial court is allowed to reject a plea agreement. They allow it only when the bargain had been

---

[13] MCL 750.520b;  MSA 28.788(2).

[14] MCL 750.520d(1);  MSA 28.788(4)(1).

[15] MCL 750.520e;  MSA 28.788(5).

conditioned on the court's consent or when the defendant's plea had not been understanding or voluntary, or was inaccurate. See MCR 6.301 and MCR 6.302. Subpart A of MCR 6.301 does not confer broad authority on the trial court to reject a guilty plea for a reason not specified in a court rule. MCR 6.302(A) specifies when a trial court may reject a guilty plea. Appellee's reliance on MCR 6.301(A) as a basis for the trial court's rejection of defendant's plea is misplaced.

There is no authority in the current Michigan Court Rules for a court to reject a plea agreement on the basis of a "plea cutoff date."[16] A trial court has no greater authority to refuse to accept a plea over a prosecutor's objection than it has to accept one.

Hence, like civil litigants, a prosecutor and a defendant are free to settle a case by agreement, even on the eve of trial. To hold otherwise, I believe, violates the established rules of *Genesee Prosecutor I* and *Genesee Prosecutor II, supra,* that the trial court (1) does not enjoy supervisory control over the prosecutor, and (2) does not have authority to force the trial of a defendant on a charge over the prosecutor's objection. *Id.* at 683, 121.

B

Since this issue has not been specifically addressed by the courts in this state, federal law, as well as the law from other states, becomes instructive in fashion-

---

[16] MCR 2.401, on which the majority relies, gives the trial court the power to set deadlines. However, read either by itself or in conjunction with MCR 1.103 or MCR 6.001(D), it does not override the specific provisions of MCR 6.300, which governs the acceptance and rejection of guilty pleas.

ing a standard. Recently, in *United States v Shepherd*,[17] the United States Court of Appeals for the District of Columbia held that a district court abused its discretion when it rejected a plea entered into during the first day of trial. Defendant Shepherd agreed to plead as charged in exchange for the government's recommendation to the departure committee for a departure from the sentencing guides.

The *Shepherd* court began its analysis by discussing the importance of the plea-bargaining process in the administration of justice. It then listed the four reasons given by the trial court for rejecting the plea: (1) the poor timing of the request, (2) the prejudice to the codefendants, (3) the questionable value of the agreement to defendant, and (4) the likelihood that defendant would later attack the plea as coercive. The appeals court rejected each contention as insufficient to justify the rejection of the plea. It vacated the conviction with directions that the case be remanded to the trial court for entry of the plea and resentencing. *Id.* at 165-166.

In *United States v Robertson*,[18] the trial court rejected as untimely a plea agreement offered shortly before trial. The court stated that the eleventh-hour agreement "put the Court in a position where [it could not] schedule anything else . . . ."

On appeal, the Tenth Circuit held that the rejection of the plea on that basis was an abuse of discretion:

> While there is no doubt a district court has considerable authority in managing its docket, scheduling concerns alone are not of sufficient importance to justify the infringement

---

[17] 322 US App DC 160, 163; 102 F3d 558 (1996).
[18] 45 F3d 1423, 1434, 1438-1439 (CA 10, 1995).

of prosecutorial discretion resulting here. . . . While the
district court has considerable leeway in rejecting the bar-
gain based on its sentencing aspect, its discretion is more
limited when its decision is based on the bargain's charging
aspect. In our judgment, rejecting a plea implicating both
branches of government solely out of concern for the dis-
trict court's scheduling is, under the facts of this case,
impermissible.

Similarly, in *United States v Moore*,[19] the trial court
rejected as untimely a negotiated plea on the day of
trial. On appeal, the Sixth Circuit remanded the case
to the trial court for a clearer statement of the rea-
sons why the plea had been rejected. It emphasized
that "a defendant is entitled to plead guilty unless the
district court can articulate a sound reason for
rejecting the plea." The Sixth Circuit noted that "the
rejection of the plea under those circumstances may
well constitute an abuse of discretion." *Id.* at 1136,
n 11.[20]

Michigan courts also have taken a skeptical view of
the rigid enforcement of deadlines in civil cases.
Although the "efficient processing of civil and crimi-
nal cases" is important, docket control is not an
objective to be elevated above the substantive rights
of the parties.[21] This Court paraphrased the policy

---

[19] 916 F2d 1131, 1135-1136 (CA 6, 1990).

[20] A New York court has held that the trial court abused its discretion
in refusing to permit the defendant to plead guilty solely because the plea
was tendered on the eve of trial. *People v Compton*, 157 AD2d 903; 550
NYS2d 148 (1990).

[21] It is well recognized that the trial courts in this state have been given
the authority to control their dockets. However, the issue in this case
does not concern docket control, but, rather, whether MCR 6.300 governs
pleas.

behind the court rule in *Higgins v Henry Ford Hosp*,[22] when citing an official committee comment:

> Rules of practice and procedure are exactly that. They should create no rights and should be thought of as indicating the way in which justice should be administered. They should give direction to the process of administering justice but their application should not become a fetish to the extent that justice in an individual case is not done. There is a need for guides and standards. They must be followed but they must always be thought of as guides and standards to the means of achieving justice, not the end of justice itself.[23]

As these cases make clear, even if we were to assume that a trial court has discretionary authority to reject a guilty plea as untimely, the scope of that discretion is limited.

In the present case, there existed no circumstances justifying the rejection of the plea. The plea offer was made by the prosecutor on the day before trial. Defendant accepted the offer the same day. There was no delay in the acceptance, only in the offer. The fact that the offer was not made by the prosecutor earlier must be considered.[24]

Because the trial court's interest in docket control is secondary to the substantive rights of the parties, I

---

[22] 384 Mich 633, 637; 186 NW2d 337 (1971).

[23] The official comment to GCR 1963, 13 interprets the rules of construction that the courts follow. GCR 1963, 13 is the precursor of MCR 1.105. However, according to the staff comment, MCR 1.105 remains substantially the same as GCR 1963, 13.

[24] In footnote 31, in distinguishing the cases cited from the present, the majority's argument gravitates toward the conclusion that, because the parties had ample notice of the judge's plea cutoff date, no violation occurred. This contention does nothing more than emphasize docket control over the rights of defendant. In fact, it trumps those rights. The federal cases cited do support that contention.

reject the majority's conclusion that the judge properly rejected the plea. The latter conclusion inflates the role of day-to-day procedural matters contrary to this Court's directive in *Higgins, supra* at 637. The maintenance of routine deadlines justifies interfering with the prosecutor's charging authority or with the parties' agreement only if the court can show it serves the interests of justice. *Robertson, supra* at 1434.

I would vacate defendant's convictions and remand to the trial court for entry of the originally agreed upon plea and for resentencing. The trial court abused its discretion by rejecting the plea agreement.

II

With respect to the juror misconduct issue, I disagree with the majority's finding of no impropriety.

Following trial, as the judge was talking with the jurors, he discovered that juror Novotny had learned of other pending charges against defendant while the trial was in progress. A newspaper article related that defendant had pleaded guilty of one count of fourth-degree criminal sexual conduct in an unrelated case. The juror told the judge that, after the first day of trial, his wife read him part of a newspaper article regarding defendant's other criminal sexual-conduct charges. The judge informed the prosecutor and the defense counsel.

A hearing was then held on defendant's motion for a new trial. Juror Novotny and the jury foreman testified. The trial judge found that the juror had learned, during trial, of defendant's other pending criminal sexual conduct charges. However, the judge concluded that the information did not influence the

juror and denied the motion, finding no prejudice to defendant.

When a juror is exposed to newspaper articles regarding a case or the defendant during the course of the trial, a new trial is warranted upon a showing of prejudice. In *Marshall v United States*,[25] the United States Supreme Court reversed a conviction and remanded the case for a new trial. Jurors had learned the contents of a newspaper article revealing the defendant's prior convictions and other inadmissible evidence. Prejudice must be determined by an analysis of the specific facts of each case. However, because I would remand to the trial court for entry of the originally agreed upon plea and sentencing, this issue becomes moot.

## III

Regarding the letters from Sergeant Harris, defense counsel objected at the sentencing proceeding to letters attached to the presentence report from Sergeant Harris of the White Lake Township Police Department. In one, the sergeant asked the court to sentence defendant to life imprisonment. He sought to correct what he thought was a miscarriage of justice in an Oakland County case in which the jury had found defendant not guilty of criminal sexual conduct. In another letter, he discussed other unsubstantiated allegations against defendant.

In response to defense counsel's objection, the judge stated that he would not consider the information contained in the letters for sentencing purposes. The letters, however, remained attached to the

---

[25] 360 US 310; 79 S Ct 1171; 3 L Ed 2d 1250 (1959).

presentence report. I agree with the majority that the letters from Sergeant Harris must be deleted from the presentence report, consistent with MCR 6.425(D)(3).

### CONCLUSION

With respect to *Grove,* I would affirm the decision of the Court of Appeals, remanding for further proceedings pursuant to *Killebrew, supra.* In *Austin,* I would reverse the decision of the Court of Appeals and remand for entry of defendant's negotiated plea as offered. I agree with the majority that, on remand, the trial court must delete the letters by Sergeant Harris from the presentence report.

CAVANAGH, J., concurred with KELLY, J.