# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

              Plaintiff-Appellee,

v

COREY ALEXANDER GREEN,

              Defendant-Appellant.

UNPUBLISHED
June 23, 2016

No. 324673
Wayne Circuit Court
LC No. 14-006022-FH

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted in a jury trial of felon in possession of a firearm (felon-in-possession), MCL 750.224f, assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to three years' probation for the felon-in-possession and felonious assault convictions, and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm

This case arises from an incident at a block party between defendant and Ciara Burke. Burke left her two sons, Dajuan and Damarian, in defendant's care at the party on the street where defendant lived. When she returned to pick them up after work, she could not find Damarian. After looking for him, Burke called 911 to report Damarian missing. According to Burke, defendant accused her of calling people to his house to cause trouble. Defendant then went into the house and returned holding a long gun, which he pointed at Burke. She called 911 again to report defendant's behavior.

First, defendant argues on appeal that the court abused its discretion by refusing to consider his request to accept a plea offer near the end of trial. This Court reviews, for an abuse of discretion, a trial court's decision to accept or reject a plea. *People v Plumaj*, 284 Mich App 645, 648; 773 NW2d 763 (2009). "'An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes.'" *Id.*, quoting *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "Questions of law, including interpretation of court rules, are reviewed de novo on appeal." *Id.*

Following the close of proofs, and immediately before the jury was set to return to hear the parties closing arguments, defense counsel stated: "Judge, evidently, my client, Mr. Green, would like to avail himself of the offer from the Prosecutor's Office." The court asked if the

-1-

prosecutor had an offer available for defendant, to which he replied, "Judge, if you'll give me three minutes I'll make a call to Mr. Dawson and see if that is still open or if it has been amended in some way or if anything is available today." The court then responded, "Well, here's the problem. The Court is not going to accept it. Alright. So we'll bring the jury on in." Following closing arguments, the jury convicted defendant as set forth above.

If a plea agreement provides for "a sentence to a specified term or within a specified range or a prosecutorial sentence recommendation," a trial court may reject the agreement, accept the agreement, take the plea under advisement, or accept the agreement after consideration of the presentence report. MCR 6.302(C)(3). A trial court has discretion whether to accept or reject a plea agreement and the court's ultimate decision will not be reversed absent an abuse of that discretion. *People v Grove*, 455 Mich 439, 460; 566 NW2d 547 (1997). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

In this case, we need not determine whether the trial court abused its discretion in deciding whether to accept or reject a plea agreement because there was no plea offer on the table after both parties submitted proofs and were preparing for closing arguments. Instead, the record shows that defendant rejected the prosecution's plea offer at the final pre-trial conference and elected to proceed to trial. Specifically, at sentencing, defense counsel discussed the plea negotiations that took place before trial. Defense counsel explained that, at the final pre-trial conference, she discussed at length with defendant the prosecution's offer for defendant to plead guilty to one count of felonious assault and be sentenced to probation. Defense counsel explained that, after discussing the offer with defendant, defendant rejected the offer and the case proceeded to trial. Thus, at the outset of the trial there was no plea offer on the table, much less after the parties submitted their proofs and were about to give their closing arguments. Essentially, after the close of proofs, defendant requested that the court allow him to reinitiate plea negotiations with the prosecution. Defendant fails to cite any law to support that the trial court had an obligation to allow him to reinitiate plea negotiations after he rejected a plea offer, after he elected to go to trial and after both parties submitted proofs and were preparing for closing arguments.[1] Accordingly, remand is not necessary because the court was under no obligation to grant defendant's request to reinitiate plea negotiations. Defendant is not entitled to relief on this issue.

Next, defendant argues that the police unlawfully arrested him on three occasions, and as a result, his case should be dismissed. We disagree.

---

[1] Moreover, even assuming arguendo that there was a plea offer on the table, the trial court was not obligated to accept the plea, MCR 6.302(C)(3), and "rejection of a tardy plea is within the discretion of a trial court," *Grove*, 455 Mich at 464. Here, considering that both parties had already submitted proofs and were preparing for closing arguments, defendant cannot show that the court's decision to reject the plea fell outside the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217.

In general, issues raised, addressed, and decided by the trial court are preserved for appellate review. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Although defendant discussed his arrests at sentencing, he failed to challenge the validity of the arrests there, or at the preliminary examination or trial. Thus, defendant failed to preserve this issue for appellate review.

This Court reviews unpreserved constitutional claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999). To establish plain error affecting substantial rights, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. Under the third requirement, the defendant must establish prejudice, meaning he must show "that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (internal quotation marks and citation omitted).

On the first occasion, June 15, 2014, the police had probable cause to arrest defendant at the scene. MCL 764.15 provides, in pertinent part:

(1) A peace officer, without a warrant, may arrest a person in any of the following situations:

(a) A felony, misdemeanor, or ordinance violation is committed in the peace officer's presence.

(b) The person has committed a felony although not in the peace officer's presence.

(c) A felony in fact has been committed and the peace officer has reasonable cause to believe the person committed it.

(d) The peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it.

"'Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed.'" *People v Chapo*, 283 Mich App 360, 367; 770 NW2d 68 (2009), quoting *People v Dunbar*, 264 Mich App 240, 250; 690 NW2d 476 (2004). In other words, "[i]n reviewing a claim that the police lacked probable cause to arrest, this Court must determine 'whether facts available . . . at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony.'" *People v Nguyen*, 305 Mich App 740, 751-752; 854 NW2d 223 (2014), quoting *People v Oliver*, 417 Mich 366, 374; 338 NW2d 167 (1983) (quotation marks and citation omitted). Circumstantial evidence and inferences from such evidence may be sufficient to establish probable cause. *Id*. at 752, quoting *People v Northey*, 231 Mich App 568, 575; 591 NW2d 227 (1998).

Officer Melissa Evans testified that, when she and Officer Michael Garrison arrived on the scene, Burke said that defendant became upset when she confronted him about losing her child, and pointed a gun at her. Further, Officer Garrison testified that Burke told him, at the scene, that she and defendant had gotten into an argument and he pointed a weapon at her. When asked why he placed defendant in handcuffs, Officer Garrison said, "Because of the possibility of weapons and there was people walking down the street towards us at this time. . . ." He also said defendant seemed excited, and was acting hostile towards Burke. From Burke's accusations to police immediately following the incident, as well as defendant's hostility towards Burke, the police possessed probable cause to arrest defendant without a warrant on June 15, 2014. The facts available to Officers Evans and Garrison at the time of arrest were sufficient to warrant a reasonable person to believe a felony had been committed, and defendant committed it.

Defendant claims that his second arrest, on June 21, 2014, was illegal because the prosecutor's recommendation, felony complaint, and felony warrant list June 24, 2014, as the date of authorization for defendant's arrest warrant. A review of the lower court file confirms that the felony complaint and felony warrant were both signed on June 24, 2014, but the prosecuting attorney's recommendation was signed on June 20, 2014. Further, defendant alleges that the police arrested him without probable cause for a third time on September 3, 2014.

Neither defendant, nor the police officers who testified at trial, discussed the dates, beyond June 15, 2014, of defendant's arrests. There is no document in the lower court file listing defendant's arrest dates. This Court may not consider defendant's comments at sentencing and the affidavit attached to his brief on appeal as facts in evidence. MCR 7.210(A)(1). Moreover, even if police lacked probable cause to arrest defendant or otherwise arrested defendant unlawfully, "[t]he invalidity of an arrest does not deprive a court of jurisdiction to try a defendant." *People v Rice*, 192 Mich App 240, 244; 481 NW2d 10 (1991), citing *People v Dalton*, 155 Mich App 591; 400 NW2d 689 (1986). "[T]he sole remedy for an illegal arrest is suppression of the evidence, not dismissal of the charges." *City of Lansing v Hartsuff*, 213 Mich App 338, 352; 539 NW2d 781 (1995); see also *Rice*, 192 Mich App at 244.

Defendant argues only that his due process rights were violated as a result of his three arrests, and that the case should be dismissed. He fails to identify, or request the suppression of, any evidence obtained as a result of the allegedly unlawful arrests. In fact, Officers Evans and Garrison both testified that they failed to search Mansfield or defendant's home for any weapons, and did not find a gun on defendant at the time of his arrest. Further, Officer Coleman testified that he attempted to knock doors on Mansfield to locate and speak with witnesses, but received no responses.

Third, defendant argues that insufficient evidence existed to support his convictions. We disagree.

This Court reviews claims of insufficient evidence de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in a light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378.

Upon review of the record, we conclude that sufficient evidence existed for the jury to convict defendant of felonious assault.

Defendant challenges the sufficiency of the evidence based solely on Burke's credibility. Specifically, defendant asserts that Burke knew Damarian's whereabouts before calling 911, and that defense counsel's "[cross-] examination called into question Ms. Burke's veracity as to the essence of the case, the assault with the long gun." This Court should not interfere with the jury's determinations regarding the weight of the evidence or credibility of witnesses. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003). Thus, defendant's sufficiency of the evidence claims fails.

Moreover, the prosecution introduced sufficient evidence for a rational trier of fact to find each element of felonious assault beyond a reasonable doubt.[2] "'The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.'" *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). An assault is "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "Battery has been defined as 'an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.'" *Id.*, quoting *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998) (internal quotation marks and citation omitted). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015), quoting *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Burke testified that, while she spoke with 911 regarding her missing child, defendant yelled, "You better not call no niggas over my house." He then went into his house and came back outside with a shotgun. According to Burke, defendant pointed the gun at her and said, "Bitch, if some niggas come over here I'll kill you." When asked how she felt as defendant pointed the gun at her, Burke said she felt scared. She was holding Dajuan's hand at the time, and did not know whether defendant would shoot. From this evidence, a rational trier of fact could find that defendant pointed a dangerous weapon, a gun, at Burke, with the intent to place her in reasonable apprehension of an immediate battery. Defendant's intent may be inferred from his use of a dangerous weapon, and his statement that he would kill Burke if she called people to his house.

Finally, defendant argues, in both his attorney's appellate brief and in a Standard 4 brief, that he was denied the effective assistance of counsel on several bases. We disagree. We also

---

[2] Defendant does not appear to challenge the sufficiency of the evidence for his convictions of felon-in-possession and felony-firearm. Instead, he argues that Burke's inconsistent testimony was insufficient to prove he committed felonious assault.

conclude that a remand to the trial court for an evidentiary hearing on his claims is not warranted.

Generally, to preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or *Ginther*[3] hearing in the trial court to establish evidence supporting the claim. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Although defendant moved for dismissal of his defense counsel at sentencing, and listed a number of ways he believed his attorneys provided ineffective assistance, he failed to request a new trial or *Ginther* hearing in the trial court.[4] Thus, defendant failed to preserve his ineffective assistance of counsel claims for appellate review.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. *Id*. The defendant must establish a factual predicate for an ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant did not seek a new trial or *Ginther* hearing in the trial court, this Court's review is limited to the appellate record. *Sabin* (*On Second Remand*), 242 Mich App at 658-659.

Defendant is not entitled to a remand for an evidentiary hearing. Pursuant to MCR 7.211(C)(1)(a), an appellant may move for remand to the trial court, within the time provided for filing appellant's brief, if "the issue is one that is of record and that must be initially decided by the trial court," or if "development of a factual record is required for appellate consideration of the issue." MCR 7.211(C)(1)(a)(*i*) and (*ii*). The appellant must attach an affidavit containing "the facts to be established at a hearing." MCR 7.211(C)(1)(a). Defendant did not file a motion to remand, but did request remand for an evidentiary hearing in his Standard 4 brief. He also attached an affidavit in support of his claims. However, this Court needs no further development of the factual record to analyze defendant's ineffective assistance of counsel claims.

To evaluate a claim of ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Hoag*, 460 Mich at 5-6, citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). For a successful claim of ineffective assistance of counsel, the defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). Further, the defendant must overcome the presumption that defense counsel's alleged actions were simply sound trial strategy. *Trakhtenberg*, 493 Mich at 52.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] The court denied defendant's motion to dismiss his attorneys.

Defendant essentially makes three claims of ineffective assistance of counsel in his appellate attorney's brief on appeal: (1) defense counsel conducted inadequate pretrial investigation and failed to present a substantial defense by refusing to interview and call witnesses, other than Cherita Stewart, who would have provided testimony beneficial to defendant's case; (2) counsel failed to adequately prepare for Stewart's testimony, and should have questioned Stewart regarding Burke's knowledge of Damarian's whereabouts; and (3) defense counsel should have cross-examined Burke regarding an incident on July 11, 2014, where Burke supposedly threw a bottle at defendant's car while he and Stewart sat inside.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.'" *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), quoting *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). "'A substantial defense is one that might have made a difference in the outcome of the trial.'" *Chapo*, 283 Mich App at 371, quoting *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

Defendant fails to overcome the presumption that his attorneys' decision not to call any witnesses beyond Stewart amounted to sound trial strategy. Although he asserts that a number of witnesses beneficial to his case should have been called to testify, at sentencing, defense counsel Gura stated, "Mr. Cooper and myself did go to the scene and we did interview several witnesses, all of which not to violate any attorney, client privilege, although I believe most of that is already gone at this point. But we did interview those witnesses and those witnesses in our opinion would be more favorable to the prosecution than to the defense. And further, they weren't willing, they were not willing to come to court." "[T]his Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

An attorney's determinations regarding how to question witnesses are presumed to be matters of trial strategy. *Horn*, 279 Mich App at 39. "When asserting ineffective assistance of counsel premised on counsel's unpreparedness, a defendant must demonstrate prejudice resulting from the lack of preparation." *Bosca*, 310 Mich App at 37, citing *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990).

Defendant asserts that defense counsel was ineffective for not asking Stewart whether Burke knew Damarian's whereabouts before arriving at the block party. However, defendant fails to overcome the presumption that counsel's decision not to ask Stewart this question was sound trial strategy, and fails to demonstrate how counsel's performance fell below an objective standard of reasonableness. On redirect examination, defense counsel asked Stewart if, from the conversation she claimed to have with Burke on the date of the incident, Burke had knowledge of Damarian's whereabouts. It is difficult to distinguish this question from the question defendant argues counsel was ineffective for not asking. Further, the mere fact that Burke knew of Damarian's whereabouts before calling 911 would not discount her claim that defendant became angry when she called 911 and pointed a gun at her. Therefore, it cannot be said that,

but for counsel's decision not to ask this question, there is a reasonable probability that the outcome of trial would have been different.

Third, defendant asserts that counsel's performance fell below an objective standard of reasonableness for failing to cross-examine Burke regarding an incident that occurred on July 11, 2014, following the incident at issue here. It is difficult to understand how evidence of this incident would be relevant to the case, or beneficial to defendant. It might demonstrate Burke's distaste for defendant, but would not disprove Burke's claim that defendant pointed a gun at her on June 15, 2014. Thus, defendant has not demonstrated that defense counsel performed deficiently by failing to question Burke regarding the incident.

In his Standard 4 brief, defendant also argues that counsel performed deficiently at the preliminary examination and at trial, and that but for counsel's deficient performance, there is a reasonable probability that the outcomes of both would have been different. Specifically, defendant claims his attorneys were ineffective for the following reasons: (1) they failed to subpoena Burke's phone records from the date of the incident; (2) they should have obtained photographic documentation of the crime scene to discredit Burke's testimony, (3) they failed to properly communicate with defendant and learn what actually happened on the date of the incident, (4) they failed to effectively cross-examine Burke regarding whether she knew Damarian's whereabouts before calling 911, and (5) they should have interviewed and called witnesses that would have been beneficial to defendant's case. Further, defendant claims that his attorneys were ineffective for failing to object to statements by the prosecutor in the opening statement and closing argument.

Defense counsel's failure to subpoena Burke's phone records, and to obtain and introduce photographic documentation of the crime scene, did not amount to ineffective assistance of counsel. Defendant argues that both could have been used to contradict Burke's testimony, and that presentation of this evidence would have been significant because the prosecution had no evidence, beyond Burke's testimony, to prove defendant pointed a gun at her.

"'[T]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome.'" *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), quoting *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Decisions regarding what evidence to introduce at trial are presumed to be matters of trial strategy. *Horn*, 279 Mich App at 39. Presumably, Burke's phone records would have shown whether she spoke with Stewart on the date of the incident. Both testified at trial, and Burke said she did not know Damarian's whereabouts before calling 911, while Stewart said that, based on a phone conversation she had with Burke, Burke had knowledge of Damarian's location. First, the phone records alone would not have provided the content of any conversation between Burke and Stewart. Further, defendant's focus on the assertion that the outcome of trial would have been different had the jury been presented with information that Burke knew Damarian's location before calling 911 is misguided. It does not follow, from such information, that defendant did not point a gun at Burke and commit felonious assault. Thus, the failure to subpoena the phone records did not amount to ineffective assistance of counsel because it did not undermine confidence in the outcome of the preliminary examination or trial.

In addition, defendant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness for failing to obtain and introduce photographs of the scene. Although it is possible that such evidence could have been used to show defendant's inability to access the side of the house or backyard as Burke described, defense counsel had already impeached the details of Burke's testimony using statements she made to the police and at the preliminary examination.

Next, defendant's claim his attorneys failed to effectively communicate with him prior to the preliminary examination and trial is actually an argument that defense counsel failed to present evidence or questions witnesses in the manner defendant would have liked. Defendant has failed to overcome the presumption that his attorneys' decisions amounted to sound trial strategy. Again, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to questions witnesses are presumed to be matters of trial strategy . . . ." *Horn*, 279 Mich App at 39. It is likely that counsel chose not to focus on whether Burke knew Damarian's whereabouts before calling 911, because Burke testified clearly that she believed her son was missing, and because such knowledge would not discount her claim that defendant became angry when she called 911, and pointed a gun at her. Defense counsel chose to attack Burke's credibility through impeachment of her testimony. "[T]his Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *Rice* (*On Remand*), 235 Mich App at 445. This same reasoning applies to defendant's claim that counsel failed to effectively cross-examine Burke regarding whether she knew Damarian's whereabouts before calling 911.

Further, as stated above, defendant fails to overcome the presumption that his attorneys' decision not to investigate and call witnesses, beyond Stewart, that would have provided testimony beneficial to his case, amounted to sound trial strategy. Although he asserts that a number of witnesses beneficial to his case should have been called, again at sentencing, defense counsel Gura explained that she and co-counsel went to the scene and interviewed several witnesses who they determined would not be beneficial to defendant's case. Again, "this Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *Rice* (*On Remand*), 235 Mich App at 445.

Finally, defense counsel's failure to object to statements made by the prosecutor in the opening statement and closing argument does not amount to ineffective assistance of counsel. Defendant asserts that defense counsel should have objected to the prosecutor's mischaracterization of the evidence when he said that the crime occurred outside the view of other people at the party. In contrast, Burke testified that the incident occurred in the plain view of others. Defendant fails to demonstrate how any deficient performance by counsel in failing to object prejudiced defendant to the point that, but for counsel's deficient performance, the outcome of trial would have been different. As defendant says in his brief, Burke testified, during direct examination, that other people were around at the time of the incident. Further, the court instructed the jury that it could not consider the attorneys' opening statements as evidence. "We presume that a jury follows its instructions." *People v Armstrong*, 490 Mich 281, 294; 806 NW2d 676 (2011).

Next, defendant asserts that counsel should have objected to the prosecutor's statement, in the closing argument, that Burke's testimony served as direct evidence that defendant possessed a gun, because the statement could be considered misleading. No gun was recovered or introduced at trial. Without addressing the meaning of direct evidence, defendant fails to demonstrate that counsel was deficient for failing to object to the prosecutor's statement, and how any deficiency in performance prejudiced defendant to the point that it affected the outcome of trial. Again, the court instructed the jury that it could not consider the attorneys' arguments as evidence. "We presume that a jury follows its instructions." *Armstrong*, 490 Mich at 294. Further, right before stating that Burke's testimony served as direct evidence that defendant pointed a gun at her, the prosecutor stated that no gun or other physical evidence had been introduced at trial. Defense counsel also reiterated, in her closing argument, that the police never recovered a gun.

Affirmed.


/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens